# Porter's Estate.

1. A testator after directing his real estate to be sold and his securities to be collected, directed that from $3000 to $5000 should be expended for the improvement of burial lots belonging to him in a cemetery, in building a wall around his lots, and in procuring a monument ; he gave $50,000 to erect a college, procure a library, &c., and $6000 additional to purchase books, &c. : he then directed " after my real estate is sold and conveyed, the several bequeathments by me made from my estate paid, that there be a proportionate amount expended in the further improvement of the cemetery lots before mentioned ; and also a proportionate amount expended in the college or university buildings, library, &c." *Held*, that the proportions were to be as fifty, six and five, calculated on the bequests to cemetery, library and college.

2. The $5000 to the cemetery having been exhausted in building the wall, the executors were allowed to retain an additional sum to build a monument, under the direction for " building a wall * * * and in procuring a suitable monument," the monument being the main object of that bequest.

3. An executor may erect suitable gravestones at the grave of a decedent, although there be no direction in the will to do so.

4. McGlinsey's Appeal, 14 S. & R. 64, recognised.

October 15th 1874. Before AGNEW, C. J., SHARSWOOD and MERCUR, JJ.

Appeal from the Orphans' Court of *Allegheny county* : No. 200,

to October and November Term 1874. In the estate of John M. Porter, deceased.

The decedent died in December 1865, on or before the 4th of that month, having made a will, dated November 30th 1865, and seised and possessed of a large real and personal estate.

He directed a large portion of his land designated to be divided into ten lots and sold by his executors. He directed other lands, also designated, to be divided into sixteen lots and sold also; a farm on other lands also to be sold, allowing William Irwin the tenant to remain on it three years, he paying the rent, &c.

"I also direct the farm purchased of J. P. Vantine, now occupied by E. Burchfield, to be sold by my executors, * * * and the proceeds of the sale to be given and applied to the academy or college hereinafter mentioned, to be expended in the extension of the library or improvements to the buildings, as the trustees may deem best. I also direct that the farm adjoining said Burchfield and occupied by Hezekiah Irwin shall be sold in like manner as the farm occupied by his father as before directed. Also, I direct that the Martin farm be sold as above stated in respect of the Vantine farm, and the proceeds applied as therein directed. And it is my wish that the said Hezekiah Irwin and E. Burchfield be permitted to stay in the places for three years after my death, upon their regularly paying their rents. * * *. My interest in the Horse Creek and Tarentum Oil Company I direct to be sold to the best advantage. * * *

"The notes, mortgages, judgments and accounts which I hold against sundry and divers persons, I desire and direct to be collected. * * * I also direct that my interest in the Himelwright property be sold by my executors, * * * and the proceeds to be applied as hereinafter directed. I also direct that the Walnut Bend property in Cornplanter township, Venango county, be sold and the proceeds be applied as hereinafter directed. Also, I direct that all my interest on Hickory be sold. Also, my interest in the Widow McClintock farm; also my interest in the Fleming farm, being my interest in about nine and a half acres. Also, I direct that my interest in one thousand acres of land in Lewis county, Kentucky, bought from a man by the name of Hallert, be sold. * * * Also, I direct that my interest in the Porter, Donnel & Co. property in Ohio, be sold, both real and personal. * * * I now give to Nancy Jane Porter McCall, my adopted sister, the house and lot I now live in, also the lot which I bought from John Adams, * * * for and during her natural life, together with all the personal property in and about my said dwelling, which shall not be by me otherwise disposed of. Also, I bequeath to my said adopted sister, N. J. P. McCall, twelve thousand dollars in seventen United States bonds.

"I also direct that from three to five thousand dollars be ex-

[Porter's Estate.]

pended in the improvement of the burial lots belonging to me in the Prospect Cemetery, in building a cut-stone wall around ,the lower end of said lots, and in procuring a suitable monument, and to have inscribed on said monument the date of the birth and death of my father, mother, brothers and sisters, and also of my own birth and death; and at the death of my adopted sister, N. J. P. McCall, to have her name lettered in the same manner, as the adopted daughter of R. S. Porter and Nancy Jane Porter. I also give and bequeath the sum of fifty thousand dollars, to be expended in the purchase of a lot or lots, and the erection of a college or university, with library rooms, &c., to be located in or near Tarentum, together with my library, and six thousand dollars additional to be expended in the purchase of useful books for the library; and it is my wish that the said college or university be known as the Porter University or College. And I do hereby appoint Rev. Joseph Horner, &c., trustees to purchase said lot or lots, and for the erection of the buildings, procuring a charter and library, with the general management of the whole concern, with power, if necessary, to add to their number and devise suitable ways for the election or appointment of their successors. * * *

" It is my wish and intention, and I also direct, that after my real estate is sold and conveyed, the several bequeathments by me made from my estate paid, that there be a proportionate amount expended in the further improvement of the cemetery lots before mentioned; and also a proportionate amount expended in the college or university buildings, library, &c.

" Also, I direct that after the death of the said N. J. P. McCall, that the house and lots bequeathed to her for and during her natural life, be sold and conveyed by my executors, proceeds of such sale be applied to the benefit of the said college or university, including the library in and for the use of said university." * * *

There were other bequests in the will which it is not necessary to particularize.

At the instance of the heirs and next of kin of the decedent the gift for the college, library, &c., was declared void as being a gift for a charitable use, and therefore within. the prohibition of the Act of April 26th 1855, sect. 11, Pamph. L. 331, 1 Br. Purd. 208, pl. 23, the will having been made within a month of the testator's death.

The executors settled three accounts; the third being that involved in this controversy.

In this account the executors took credit for " amount retained on account of cemetery under will of testator, being the proportion set apart for the same,—$6500."

The balance for distribution appearing on the account was $27,451.57.

Exceptions were filed to the account, one of which was that the

[Porter's Estate.]

accountants should not be allowed a credit for $6500 retained on account of the cemetery.

William Blakely was appointed auditor to pass upon the exceptions and report distribution.

On the hearing before him the marble-mason testified that he did the stone work for the fence of the cemetery lot under contract for $4200, and lost money by the job, and that a monument corresponding with the fence should cost not less than $5000. The auditor found that the whole sum which was to be appropriated to the bequest to college, &c., was $61,643.42; he also found that in a former account the executors were allowed a credit of $5000, and that that was all the cemetery was entitled to receive until the other bequests should be paid.

The auditor sustained two of the exceptions, one of which was to the allowance of the sum of $6500, retained on account of cemetery; and he thus increased the balance against the executors to $36,197.54. He reported also that the bequests to the charity —now payable to the next of kin—should be first paid to them before the " proportionate amount " of the residue should be distributed ; that the next of kin were entitled to $31,043.33 out of the present account, in addition to what they had theretofore received; which would leave $3,236.62 to be divided between the next of kin and the cemetery in "proportionate amounts," as $61,643.42, the total amount of bequests to the college, is to $5000, the total amount of bequest to " Prospect Cemetery," giving to the heirs the additional sum of $2993.79 and to Prospect Cemetery the sum of $242.83.

The executors filed exceptions to the report, covering the surcharges made by the auditor against them.

The court sustained one of the exceptions but overruled that to the disallowance by the auditor of the credit of $6500 for the cemetery lot.

In delivering their opinion the Orphans' Court said : * * *

" We are of opinion that the auditor was correct in surcharging the account with the $6500 for which the executors claimed credit; but in sustaining the auditor's report in this respect, we do not decide that the contemplated improvement of the cemetery lot, including the erection of monument, &c., should not be carried out.  It appears that a considerable portion of the estate remains unsettled and will be brought into the next account for distribution ; and it is probable that the proportionate share of that fund to which the executor will be entitled for the further improvement of the cemetery lot, will be sufficient for that purpose.  If it is not, it is to be hoped that the heirs at law will not be so far lost to every sense of propriety as to object to the appropriation of a sufficient sum to mark, in a suitable manner, the resting place of their relative and benefactor.  The beneficient design of the tes-

[Porter's Estate.]

tator, as expressed in his will, was defeated, on the ground that his will was not executed as long before his decease as the statute requires. This of course has enured to the benefit of the heirs at law, some of whom appear to be unwilling to see a reasonable amount expended in the erection of a monument. Such a course reflects but little credit on such of them as pursue it. A monument suitable to the estate and condition of the testator should be erected, and if the "proportionate amount" mentioned in the will should prove inadequate, a sum sufficient to supply the deficiency should be appropriated out of the general funds of the estate. After surcharging the account with the $6500, we have the sum of $33,951.57 as the balance for distribution." * * *

After stating some other items to be considered in ascertaining the amount for distribution the court proceeded :

"Deducting this from the amount found by the auditor, as above stated, we have the sum of $22,952.16 yet to be received by the distributees before the 'proportionate amount' of the residue is given for the further improvement of the cemetery, &c. This last sum, deducted from the net balance for distribution, as above, leaves the sum of $9072.82, of which a proportionate amount, as directed by the will, should be appropriated for the further improvement of the cemetery lot. In endeavoring to determine what is meant by 'a proportionate share,' we find that in the clauses of the will, immediately preceding the one in which this expression is used, the testator gives $5000 to be expended in the improvement of this burial lots, &c., and—including his private library—the sum of $56,203.42, to be expended in college or university buildings, library, &c. We are of opinion that it is to these sums respectively that the testator refers when he speaks of 'a proportionate amount.' It is true that he makes other provisions for the college, such as directing the proceeds of the property devised to his adopted sister for life to be applied after her death to the further improvement of the college or university buildings and library, also the proceeds of the Vantine farm, &c. : but none of these were to be so applied immediately after the death of the testator. The Vantine farm was not to be sold for three years, and the property devised to his adopted sister not until after her decease. We have concluded that in speaking of 'a proportionate amount' the testator had reference to the sums already named in the immediately preceding clauses of the will. If we are correct in this, the proportion of the one would be 8.17 per cent. and the other 91.83 per cent., or $741.24, to the executors for the further improvement of the cemetery, and $8331.54 to the distributees, in addition to the $22,952.16 above mentioned." * * *

The court accordingly decreed distribution on this basis.

The executors appealed to the Supreme Court and assigned for error, amongst others, that the court had surcharged them with the $6500.

[Porter's Estate.]

*W. S. Purviance* and *S. A. Purviance*, for appellants.

*N. W. Shafer*, for appellees.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 2d 1874.

The testator, John M. Porter, intended the bulk of his estate to be appropriated to three objects : 1. The purchase of a lot or lots and the erection of a college or university, to be located in or near Tarentum, for which purpose he gave and bequeathed the sum of $50,000. 2. The purchase of useful books for the library, for which $6000 were to be expended. 3. The improvement of the burial lots belonging to him in the Prospect Cemetery, in building a cut stone wall around the lower end of said lots, and in procuring a suitable monument. For this last purpose he directed that from 3 to $5000 should be expended. $5000 may then be assumed as the amount to be appropriated to the cemetery. He then adds the clause which has given rise to this controversy. " It is my wish and intention, and I also direct that after my real estate is sold and conveyed the several bequeathments by me made from my estate paid, that there be a proportionate amount expended in the further improvement of the cemetery lots before mentioned ; and also a proportionate amount in the college or university buildings, library, &c."

What does the testator refer to as intended to fix these proportions? We think evidently the clause immediately preceding, and that the proportions in which the residue of his property after the real estate was converted into money, the debts discharged, and the several bequeathments paid, was to be divided between these three objects, were to be as fifty, six and five. It is true that in a former part of his will he had directed certain real estate to be sold and the proceeds to be specifically applied in the extension of the library or improvements to the buildings of the college, as the trustees may deem best. But this was not to be until three years after his death, and it is very significant that these amounts were not for the original erection but for extension, and were to be appropriated to the buildings or library, according to the discretion of the trustees. No proportion between these two objects was to be observed.

Unless we adopt the proportions indicated we have no other figures in the will to which recourse can be had. It is argued, however, that the clause in controversy relates only to the proceeds of the real estate. Whatever effect such a construction, if legitimate, would have upon the ultimate result, we think it inadmissible. There is certainly nothing in the language of the will, in any construction which can be put upon it, which confines the direction to the proceeds of sale of real estate. It fixes the time for the apportion

[Porter's Estate.]

ment to be after the real estate is sold and conveyed, but does not confine the provision to the proceeds. There was no error then in the construction placed on the will by the court below.

But they refused to allow the executors to retain any amount for a suitable monument to the deceased. It is to be observed that the sum which is to be awarded as the proportionate share to be appropriated to the cemetery is only, in the words of the testator, for its " further improvement."

He evidently contemplated that his original directions upon that subject would have been carried out when the ultimate division of the surplus would take place. It appears that of the $5000 originally retained by the executors on the settlement of the first account, only $242.83 remained, yet no monument to the deceased had been built. The whole was expended in the erection of a cut-stone wall around the lower end of the lots, and other improvements. No complaint has been made of the executors in this respect. We may conclude that it was a mistake on the part of the testator as to the cost of such a wall. It is not uncommon for such mistakes to be made. Mr. Girard never expected that the unsightly stone wall which he directed to be built around his college grounds would cost several hundred thousand dollars. The monument on which was to be inscribed the date of the birth and death of his father and mother, brothers and sisters, and also of his own birth and death, and of his adopted sister, was evidently the main object of the bequest. It was not merely the gratification of personal vanity. It was a memorial of affection to those whom he had loved, and whose memory he had cherished. It would be cruel to disappoint such an intention. This court has recognised the expense of a suitable tomb-stone over the grave of a decedent to be a legitimate item of credit in the accounts of an executor, even when no provision on the subject was made in the will of the testator: McGlinsey's Appeal, 14 S. & R. 64. The stone-cutter who built the fence, and who says he lost money by the job, testifies that " a monument corresponding with the fence would cost $5,000." Under all the circumstances of the case we think the executors ought to have been allowed to retain that amount, to be applied with the small balance on the former appropriation of $5000 to that purpose. The testator was a gentleman of large estate, and the main purpose of his will in the erection of a college and establishment of a library in connection with it, has been defeated by his death within a calendar month after the execution of his will, so that his heirs at law and next of kin, who have become entitled to these bequests, cannot be regarded as special objects of his bounty.

Decree reversed and record remitted, that the distribution may be awarded according to this opinion. The costs of this appeal to be paid from the estate.