Estate of John Webb, Deceased.  Appeal of William M. Webb et al., Exrs.

[Marked to be reported.]

*Decedents' estates—Expense of tombstone.*

The expense of a suitable tombstone over the grave of a decedent is a legitimate item of credit in the account of an executor even when no provision on the subject was made in the will of the testator.

*Executors and administrators—Surcharge—Negligence.*

Executors and administrators are not liable beyond what they actually receive except in cases of gross negligence.

Where executors employ, for the collection of a judgment, the same attorney whom testator employed to procure the judgment, and the attorney, after collecting the debt, becomes insolvent and fails to account for it, the executors are not liable for the loss.

It seems that if, after the executors were informed of the payment of the judgment to their attorney, they failed to take steps to collect it from him when it was possible to do so, they would be liable for the loss.

Argued Oct. 18, 1894. Appeal, No. 294, Oct. T., 1894, by executors, from decree of O. C. Butler Co., Dec. T., 1893, No. 13, confirming report of auditor. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of the auditor on exceptions. Before GREER, P. J.

From the record it appeared that the auditor, Everett L. Ralston, Esq., refused to allow credit for $120 which was paid by accountants for a tombstone for decedent. The auditor also surcharged accountants for $830.97, being the amount of a judgment in favor of decedent, and against William Curry. Accountants filed exceptions to the two items of surcharge.

The court, in an opinion by GREER, P. J., overruled the exceptions. The portion of the opinion relating to the Curry judgment was as follows:

" John Webb loaned $700 to Wm. B. Curry in January, 1889, for which he took Curry's note, payable in five years—in January, 1894,—with interest payable semi-annually.

" Webb gave the note to his attorney, Walter L. Graham, Esq., with direction that judgment be entered on it. The attorney entered the note at C. P., 138 March Term, 1889, Butler county. Curry paid Webb the interest promptly during his lifetime, and paid three payments of interest at maturity to Wm. M. Webb, one of the executors, the last payment being in January, 1892, when Wm. M. Webb told him that they would have to raise some money on the judgment; that they needed money to pay legacies and they would have to sell it. Curry told him that he thought he could pay it, and asked the advantage of lifting it. William then said that Walter Graham was their attorney, and that he (Curry) could see him and make arrangements to pay it as soon as convenient; there was no time set. Curry came to Butler, saw Mr. Graham, the attorney, and told him what William M. Webb had said. Graham was willing to accept the money and receipt for it, and made arrangements for a meeting of Curry and the executors at Butler. At the time fixed, January 26, 1892, Curry came to Butler, but did not meet the executors. Hearing that John Webb's wife was to be buried that day, he paid the money to Walter L. Graham, Esq., who gave him a receipt on the docket. Graham never paid the money over to the executors, and they say that they did not know that the money was so paid, until they learned it at a hearing before the auditor in October, 1893, some twenty-one months afterward.

" They admit that the judgment was good security, as good as the bank, and that they wanted to sell it to pay off legacies.

" There is no evidence that they ever offered it for sale after the conversation with Curry, when he paid the interest in January, 1892, nor to show that they attempted to collect interest after that time, although they needed money, and the interest had previously been paid promptly.

" On this state of the facts, the auditor surcharged them with the amount of the judgment and interest, $830.97. Was he right?

"Executors and administrators or trustees acting in good faith, and without any willful default or fraud, will not be responsible for any loss that may arise. They are not liable beyond what they actually receive, unless in case of gross negligence, and a court will require nothing more from a trustee than common prudence, common skill and common caution: Calhoun's Est., 6 Watts, 188 ; Moore's Ap., 10 Pa. 438 ; Johnson's Ap., 12 S. & R. 324 ; Keller's Ap., 8 Pa. 289 ; Neff's Ap., 57 Pa. 96 ; Young's Ap., 99 Pa. 74 ; Witmer's Appeal, 87 Pa. 122 ; Bradley's Appeal, 89 Pa. 514 ; Chambersburg Saving Fund Assn.'s Ap., 76 Pa. 228, and many others, the latest of which are Landmesser's Ap., 126 Pa. 115 ; Law's Est., 144 Pa. 499.

"In all these cases there was proof of insolvency, or inability to pay on part of the attorney, trustee, bank or party holding the money. The auditor holds that there is no such proof in this case. It having been shown to the court on argument that the accountants' side of the case before the auditor was conducted by Walter L. Graham, the attorney who had the money, the court, on motion of their attorney, Col. Thompson, referred the report back to the auditor for the purpose of giving them an opportunity of proving any such material facts upon this question.

"A time for the hearing was fixed by the auditor, testimony taken on part of each party, and a supplemental report filed by the auditor, in which he finds as a fact that the proper effort was not made by the accountants to have the money paid by Graham. That he (Graham) was then, and is now, a member of the Butler bar in good standing. That there is not any proof of his insolvency or that he cannot pay, or has refused to pay, or that he has ever been asked to pay the money, and that no steps have been taken to compel him to pay it, therefore the auditor refused to change or modify his rulings.

"A court of chancery deals with great tenderness towards trustees acting in good faith, but it was certainly the duty of these accountants to make every reasonable effort to collect this money from Graham, and, if they failed, show the court why. They should show some change in his financial circumstances, or that he cannot or will not pay, before they can be released. Any other ruling on these exceptions would be more

liberal than just.  The learned auditor is correct in his findings of fact and conclusions of law, therefore the exceptions are all dismissed, report confirmed, and distribution awarded as recommended.  Accountants to pay the costs on exceptions, and the costs on the reference."

*Errors assigned* were (1) in surcharging the executors with the amount of the Curry judgment; (2) in disallowing the item of $120 for a tombstone; (3) in confirming the report of the auditor.

*John M. Thompson, W. C. Thompson* with him, for appellants.—Trustees are not liable for money which they never actually received, except for "gross negligence, bad faith or supine negligence," conduct which is characterized in many cases as "willful default," conduct which, while not necessarily fraudulent, is yet in bad faith: Johnson's Ap., 12 S. & R. 324; Moore's Ap., 10 Pa. 438; Calhoun's Est., 6 Watts, 188; Thompson v. Brown, 4 Johns. Ch. 619; Knight v. Earl of Plymouth, 3 Atk. 480; Neff's Ap., 57 Pa. 96; Keller's Ap., 8 Pa. 289; Konigmacher v. Kimmel, 1 P. & W. 213; Chambersburg Saving Fund Assn.'s Ap., 76 Pa. 228; Twaddell's Ap., 5 Pa. 15; Moore's Ap., 10 Pa. 435; Springer's Est., 51 Pa. 342; Stem's Ap., 5 Whart. 476; 7 A. & E. Ency. L. 350, 353, note; Thompson v. Brown, 4 Johns. Ch. 629; Calhoun's Est., 6 Watt. 185.

A tombstone is a proper expense: McGinsey's Ap., 14 S. & R. 64; Porter's Est., 67 Pa. 43; 1 Rhone's O. C. Pr. 387; Connelly's Est., 28 Pitts. L. J. 352.

*H. H. Goucher, G. W. Fleeger* with him, for appellee.—Graham did not receive the money nor exercise any act with reference to its collection, as agent or attorney for John Webb in his lifetime, and as the death of the principal is, ipso facto, a revocation of the powers delegated to an agent, he could not legally represent him after his death: Story on Agency, §§ 487 and 488; 1 A. & E. Ency. L. 446; Cassiday v. McKenzie, 4 W. & S. 282; Darr v. Darr, 59 Iowa, 81.

The payment of a debt to an attorney is a payment to the party: Rienholdt v. Alberti, 1 Bin. 470; B. & L. Association v. Real Estate Title Co., 156 Pa. 181.

The accountants were negligent in not collecting the money from Graham : Strong's Ap., 160 Pa. 13.

In Calhoun's Est., 6 Watts, 188, (one case in which the attorney had the money,) the evidence did not show that Wright, the attorney, had received the money from the sheriff as attorney for the executors of Calhoun.

It has not been shown that Walter L. Graham is insolvent or that the money had been lost or embezzled, but on the contrary that it will be forthcoming when wanted.

The cost of the monument is not a debt of the decedent and can in no sense of the word come under the head of " funeral expenses," hence it is not included in the payments authorized by statute, and was not provided for by the will : Wynkoop v. Wynkoop, 42 Pa. 302.

OPINION BY MR. JUSTICE GREEN, Jan. 7, 1895 :

It is rather surprising that after two express decisions of this court to the contrary, the auditor and court below should have refused a credit of $120 paid by the accountants for the erection of a tombstone over the grave of the testator. Both McGlinsey's Appeal, 14 S. & R. 64, and Porter's Estate, 77 Pa. 43, decide explicitly that an allowance for such an expenditure is entirely proper, and credit for it should be given against the estate of the decedent. In the former of these cases the expense was incurred by an administrator, in the latter by executors, and in both the credit was allowed without the slightest hesitation. In Porter's Estate, Mr. Justice SHARS-WOOD, delivering the opinion, said, " This court has recognized the expense of a suitable tombstone over the grave of a decedent to be a legitimate item of credit in the accounts of an executor, even when no provision on the subject was made in the will of the testator."

In the present case the credit claimed for this purpose was only $120, which was entirely reasonable and proper in any point of view. Wynkoop v. Wynkoop, 42 Pa. 293, contains nothing in conflict with the case above cited. This question did not arise there, and in any event the act of burial includes all the usual incidents of decent burial, of which one, at least, is the erection of a suitable tombstone.

As to the surcharge of the amount of the Curry judgment

we are of opinion it should not have been made. The loan was made by the decedent who took a judgment note for it, payable five years after date, and it did not mature until January 11, 1894. The decedent employed Mr. Graham, a member of the bar, to enter the judgment, and Mr. Graham did so and entered his appearance for the decedent as plaintiff in the judgment. The record remained in this condition until the death of the decedent, which occurred in 1890. The executors employed Mr. Graham as their counsel in the settlement of the estate. During the life of John Webb the interest was paid to him as it fell due, and after his death several interest payments were made to the executors. In January, 1892, the last of these payments of interest was made to the executors, and Mr. William M. Webb, one of the executors, then told Mr. Curry, the judgment debtor, that they would need some money to pay legacies, and supposed they would have to sell the judgment. Mr. Curry then told Mr. Webb that he would like to have the opportunity of paying the judgment and said he thought he could pay it. Mr. Webb then told Mr. Curry that Mr. Graham was their attorney and he should see him about it, and arrange the payment as soon as was convenient. Afterwards, about January 26, 1892, Mr. Curry paid the money to Mr. Graham who thereupon satisfied the judgment of record.

The executors filed their first account on February 18th, 1892, and did not charge themselves with the money paid by Curry to Graham. They filed another account on August 5th, 1893, and it was on the audit upon this account that the auditor was asked to surcharge the executors with this money. At the meeting before the auditor on October 12th, 1893, both of the executors testified that they had no knowledge of the payment of the money due on the Curry judgment, either when it was paid or afterwards, until they heard of it on that audit. That Graham had never told them of it but had said he could have the money when the account was confirmed. They also testified that Graham was their counsel throughout the settlement of the estate.

It cannot be doubted that the payment to Graham was a good payment and that the accountants could not be charged with supine negligence for permitting the payment to be made or for not collecting it from him if he was insolvent, and on that account they were unable to collect it.

The leading case in Pennsylvania on this subject is Calhoun's Estate, 6 Watts, 185. There the testator had recovered a judgment against solvent debtors and held it at the time of his death. The executors issued a sci. fa. to revive, employing the same counsel who had been employed by the testator. Judgment on the sci. fa. was obtained, execution issued and certain lands were levied upon and condemned as the property of the defendants in the judgment. Nothing further was done for several years when another sci. fa. was issued and to that the surviving defendant pleaded payment with leave, and then that proceeding rested. Subsequently other proceedings were had which so resulted that if the money was collected by the counsel of the executors it was embezzled by him, and if not it was lost through his neglect in conducting the proceedings. Testimony was given to show that the attorney had collected the money and used it himself. On the settlement of the executors' account an attempt was made to surcharge them with the money lost. The orphans' court surcharged them but this Court reversed the decree and held that the executors were not liable. Mr. Justice ROGERS, delivering the opinion, said, " Thus executors, administrators or trustees acting with good faith, and without any willful default or fraud, will not be responsible for any loss that may arise. All that a court of equity requires from trustees is common skill, common prudence and common caution. Executors, administrators or guardians, are not liable beyond what they *actually* receive unless in case of gross negligence; for when they act as others do with their own goods and with good faith, and not guilty of gross negligence they are not liable : 1 Penns. Rep. 213, Konigmacher, Appellant, v. Kimmell, Assignee ; Thompson v. Brown, Fay and others, 4 Johns. Cha. Rep. 619. A court of equity, as is said in Thompson v. Brown, always treated trustees, acting in good faith, with great tenderness. . . . In Routh v. Howell, 3 Ves. 567, the same point was ruled. Executors were discharged from liability for a loss arising from the insolvency of a banker whom the testator had trusted and with whom they suffered stock, deposited by the testator, to remain. This principle has an exceedingly strong bearing on the case in hand." Speaking of the action of the executors it was further said, " They reposed confidence where the testator had reposed it; for it

must not be forgotten that Mr. Wright was the counsel selected by the testator himself. . . . Nor can it affect the liability of the executors whether Mr. Wright received the money or not, nor in what capacity he received it, as they had a right to repose confidence in his skill. The money was lost by his mis conduct, and the cases cited show that trustees who act with good faith, are not liable for such mismanagement of their agents as they can neither foresee nor control."

All of the foregoing has been many times affirmed by this court and it is the undoubted law of the commonwealth to-day.

In Moore's Appeal, 10 Pa. on page 438, we said, " The general rule unquestionably is that a trustee is not liable for more than he receives of the profits of the estate, for he is considered in the character of a stakeholder or bailiff. If you wish to surcharge him beyond the actual profits, you must prove satisfactorily supine negligence or willful default."

In Chambersburg Saving Fund's Appeal, 76 Pa. 203, we said, " It is well settled that a trustee shall not be surcharged for a loss which has occurred, in case he has exercised common skill, common prudence and common caution ; but for supine negligence, or for willful default he shall be held responsible," citing several cases.

In Landmesser's Appeal, 126 Pa. 115, a guardian placed a claim in the hands of an attorney, at the time of good standing, for collection. The attorney having collected the money and embezzled it, gave the guardian his judgment note for the amount which proved worthless by reason of the maker's insolvency. In such case the fact that the guardian declined to incur costs in a fruitless effort to enforce payment of the note by ordinary process, or to apply to the court for a rule on the attorney, or to institute a criminal prosecution against him, was not such negligence as would warrant a surcharge of the amount of the note.

Without further reference to the adjudicated cases, and recurring to the facts of this case, we do not perceive thus far sufficient evidence of supine negligence on the part of these executors to justify a surcharge of the amount in the hands of their attorney. They were guilty of no negligence in allowing him to receive it. He was trusted by their testator and their trusting him was no proof of negligence. They were guilty of

no willful default and of no fraud.   They did not know the
money had been collected by him at the time, even when their
last account was filed, and at the time of the audit they had no
sufficient opportunity to enforce collection from him by adverse
proceedings.   They testify that he assured them the money
would be forthcoming when the account was confirmed.   While
that is no excuse for his not paying over the money, it is a rea-
sonable excuse for their not having it at the moment they dis-
covered he had received it, and even at the close of the audit.
It is true the orphans' court referred the matter back to the
auditor to hear further testimony, and such testimony was taken
in May, 1894.   The accountants were then examined in relation
to this matter and they gave full testimony upon the whole sub-
ject.   But for some unaccountable reason they were not asked,
by counsel on either side, what was the reason they had not col-
lected the money from Graham, nor whether they had or had not
taken any steps to collect it, nor whether Graham was insolvent.
This was dereliction on the part of counsel on both sides for
which we do not feel disposed to surcharge them at this time.
As the asset is one that has not yet been administered it is still
the subject of a future accounting to which the executors may
yet be summoned by citation, when the whole subject can, and
certainly ought to be thoroughly investigated, especially the
question of Graham's solvency.   We only decide now that on
the present state of the record we do not think the executors
should be surcharged with this debt.   Should they fail to show
hereafter that they could not have collected the money after they
were informed of its payment to Graham, a very grave question
as to their liability to be surcharged will arise.   If any false
sentiment about exposing the insolvency or dishonesty of their
own attorney should deter them from a thorough exhibition of
the matter they must take without complaining whatever con-
sequences may result.

The decree of the court below is reversed and the record is
remitted with instructions to restate the account in accordance
with this opinion, the costs of this appeal to be paid by the
appellee.