GOOCH *v.* BEASLEY *et al.*

(*Nashville.* December Term, 1916.)

1. **EXECUTORS AND ADMINISTRATORS.** Contracting indebtedness. "Funeral expensse."

A monument to be erected over the deceased's grave is a part of the funeral expenses, though not a strictly necessary disbursement but entirely proper when the estate is solvent. (*Post,* *pp.* 405, 406.)

Cases cited and approved: Killebrew v. Murphy, 50 Tenn., 546; Fite v. Beasley, 80 Tenn., 328; Cannon v. Apperson, 82 Tenn., 553; Cate v. Cate, 43 S. W., 365; Pease v. Christman, 158 Ind., 642; Moulton v. Smith, 16 R. I., 126; Bendall v. Bendall, 24 Ala., 295; Van Emon v. Tulare Co., Superior Court, 76 Cal., 589; Kroll v. Close, 28 L. R. A. (N. S.), 572; Moyers' Estate, 5 Kulp. (Pa.), 167; Webb's Estate, 165 Pa., 330.

2. **EXECUTORS AND ADMINISTRATORS.** Contracting indebtedness. Funeral expenses. Monument for deceased.

The manner of burial and erection of monument for deceased is a matter largely within the discretion of the executor, so long as he does not expend unreasonable amounts. (*Post, pp.* 405, 406.)

3. **EXECUTORS AND ADMINISTRATORS.** Contracting Indebtedness. Monument for Deceased.

It was not an abuse of the discretion of the executor of a deceased person who left an estate of $20,000 to seek allowance of the sum of $240 for a monument for the deceased. (*Post, p.* 406.)

FROM WILLIAMSON.

Appeal from the Circuit Court of Williamson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.——— ————, Judge.

J. C. Eggleston and W. J. Smith, for appellant.

H. P. Fowlkes, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

Andrew Craig Beasley, a citizen of Williamson county, died at the age of eighty-eight years, leaving an estate valued at more than $30,000. He left a will which directed an equitable division of the property between his widow, who was his second wife, two grandchildren, who were the children of a daughter of the second marriage, and Zachariah W. Beasley, son of the first marriage, and himself a man who had attained the age of sixty-six years. The widow, desiring that a monument should be erected to the memory of the husband and father, consulted the executor, who agreed that if she would expend $240 for the purpose, he would, on settlement of the estate, refund this sum to her, if he could secure the approval of the chancellor. Accordingly, when the present bill was filed for construction of the will, which latter feature of the case we have disposed of in an oral opinion affirming the decree of the court of civil appeals, the executor presented to the chancellor the question of paying for the monument. Zachariah W. Beasley objected on the ground that he had not been consulted either as to the price or the location. The will contained nothing concerning the monument. The chancellor allowed the

charge, and thereupon the son appealed to the court of civil appeals, where the judgment on this branch of the case was affirmed. The case was then brought to this court by the writ of *certiorari.*

Singularly enough the exact question has never been decided in any of our reported cases, so far as our own knowledge extends, or the researches of counsel indicate. We have, however, two cases in which, *arguendo,* the propriety of allowing such expenditure to a reasonable amount was recognized. *Killebrew* v. *Murphy,* 3 Heisk. (50 Tenn.), 546, 558; *Fite* v. *Beasley,* 12 Lea (80 Tenn.), 328, 330, 331. In the case last cited the will itself directed the purchase and erection of a monument, not, however, over the testator's remains, but to the memory of his father, mother, and deceased wife. There is also the case of *Cannon* v. *Apperson,* 14 Lea (82 Tenn.), 553, 590, 591, in which there was a special direction in the will for the erection of a monument over the testator's remains. The case of *Cate* v. *Cate* (Ch. App. 1897), 43 S. W., 365, may also be referred to, where the monument was ordered by the deceased during his lifetime, and who approved the purchase and promised to pay the cost.

In other jurisdictions the rule is well settled in favor of the allowance where the estate is solvent (*Pease* v. *Christman,* 158 Ind., 642, 64 N. E., 90; *Moulton* v. *Smith,* 16 R. I., 126, 12 Atl., 891, 27 Am. St. Rep., 728) and the cost is in reasonable proportion to the estate of the deceased (*Bendall* v. *Bendall,*

24 Ala., 295, 60 Am. Dec., 469; *Van Emon* v. *Tulare Co. Superior Court,* 76 Cal., 589, 18 Pac., 877, 9 Am. St. Rep., 258; 18 Cy., 267, 268, and cases cited; also pages 439 and 440; note to *Kroll* v. *Close,* 28 L. R. A. [N. S.], 572 and cases cited), but not if the estate is insolvent (*Pease* v. *Christman,* supra; *Moyers' Estate,* 5 Kulp [Pa.], 167). The absence of any direction in the will of the deceased, on the subject, does not impair the executor's right to make the expenditure, if the amount be reasonable. *Webb's Estate,* 165 Pa., 330, 30 Atl., 827, 44 Am. St. Rep., 666. A discretion in respect of the matter, speaking generally, is vested in the personal representative (*Cannon* v. *Apperson,* supra), subject, of course to a future accounting, and to the approval of the court when his vouchers are offered for credit.

The allowance may be properly characterized as a part of the funeral expenses, not indeed a disbursement strictly necessary, as are those for the actual interment and the outlays connected therewith for essential things, but still proper when the estate is solvent, as comporting with a sense of justice to the deceased who produced the estate, and in conformity with natural piety, and the almost universal sentiment and custom among civilized people. If strict necessity were the rule, under no circumstances to be departed from, then indeed would it result that in every case the lowest cost for affecting the interment would have to be sought among available undertakers, without regard to the extent or char-

acter of the estate, to the scandal and outrage of the public sense of decency. We all know that these matters as to interment are almost always committed to the sole care of the immediate family of the deceased, as indeed they must generally be, because the interment most usually takes place before it can be known whether the executor nominated by the testator will be accepted and qualified by the probate court, or who will be appointed administrator; the only check on extravagance being that the executor or administrator subsequently qualified cannot pay the bill unless it be a reasonable one, or can pay only so much of it as is reasonable under all the circumstances. It is within his discretion to determine whether there should be a vault, a simple grave with the customary mound of earth, or a grave covered or adorned by a monument. The latter is a part of the general expense of burial, though, as stated, not an essential part.

In the case before us we think the amount paid for the monument was very modest indeed, considering the value of the estate.

Affirm the judgment of the court of civil appeals.