## Krewson's Estate

*Russell J. Brownback*, for exceptants.

HOLLAND, P. J., February 29, 1940.—The estate is insolvent. The assets with which accountants charge themselves in their account aggregate $2,336.30. Disbursements for which credits are claimed are for widow's exemption, losses on collecting accounts receivable, the usual administration expenses, and an item of $65 for a

tombstone. These total $1,542.35. The balance for distribution shown by the account is $842.88.

Claims of numerous unpaid creditors were submitted by accountants at the audit. Four preferred claims, including funeral expenses, hospital expenses, and medical services, amount to $493.98. Twenty general claims total $5,765.53. Because of the estate's insolvency, the auditing judge allowed the claim for funeral expenses, as a preferred claim, in the amount of only $300 instead of the $336 which was claimed. For the same reason the auditing judge surcharged accountants with the $65 credit claimed in the account for a tombstone, and refused to allow an additional credit of $1 for the same purpose as requested at the audit.

The adjudication thus made available for general creditors $450.50, whereby their dividend came to .0781367. Of these 20 general claimants, 14 will receive less than $5 each, and but two will receive as much as $100 each.

To the surcharge and disallowance of the additional credit for the tombstone, accountants have excepted. They contend: (1) That the auditing judge was without authority to impose a surcharge in the absence of exceptions to the account and without notice or a hearing; (2) that a tombstone is "an expense of the estate and of administration."

For their first proposition accountants rely on Stitzel's Estate, 221 Pa. 227 (1908), the import of which has been fully discussed in the opinion of this court, of even date, in Colton's Estate, 56 Montg. 76, and which need not be repeated here. It will be sufficient to point out that in Stitzel's Estate, which involved the amount of counsel fees, the court said (p. 230): "There is no question of law or public policy involved, simply a question of the proper or improper amount paid for a proper charge." We agree that if a tombstone is a "proper charge" in an insolvent estate, Stitzel's Estate applies; but if it is not, then that case cannot apply. Therefore, the order of inquiry should be reversed.

While there have been many cases on the subject of tombstones or grave markers as proper charges in decedents' estates generally, neither appellate court has as yet ruled on that question in an insolvent estate, so controlling authority is wanting. Lower court cases in point are conflicting. In Gordon's Estate, 22 Dist. R. 1023 (1913), this court refused to allow a claim for a tombstone as a preference. Judge Solly there held that Webb's Estate, 165 Pa. 330 (1895), Porter's Estate, 77 Pa. 43 (1874), and McGlinsey's Appeal, 14 S. & R. 64 (1826), all of which approved the cost of a tombstone as a proper charge against the legatees and distributees of a solvent estate, were no authority for an insolvent estate. The court followed Moyer's Estate, 5 Kulp 167 (1888), where Judge Rhone refused to allow the cost of a monument as a preference under the Act of February 24, 1834, P L. 73, sec. 21, as part of the funeral expenses. He remarked that:

"There are cemeteries where no monument is seen. . . . Where estates are solvent we allow the cost of appropriate tombstones but think any person may be decently buried without any blocks of marble or cut-stone over the grave. . . . Every one should be just to the living before he can expect them to ornament his grave." Also following this decision is Villee's Estate, 9 Lanc. L. R. 353 (1892).

Holding to the opposite view is Meyer's Estate, 18 Phila. 42, 43 L. I. 108 (1886). While Judge Hanna there clearly stated that a monument should be preferred under the act of 1834, the report does not disclose whether that estate was insolvent. So while the statement has been accorded full value, it may have been merely a dictum. Also, Kistler's Estate, 11 Leh. L. J. 279 (1925), relying on Kreeger's Estate, 277 Pa. 326 (1923). Accord: Esbenshade's Estate, 29 Lanc. L. R. 196 (1912) (lettering tombstone).

Several cases of insolvent estates involve monuments contracted for by decedent in his lifetime, but unpaid for

at his death. Strayer's Estate, 33 Lanc. L. R. 57 (1915), while not entirely clear, apparently refused the claim preferred status solely because decedent himself had contracted for the tombstone, but allowed it as a general claim. The court does not mention its earlier decision in Villee's Estate. However Freeman's Estate, 10 Wash. Co. 30 (1929), does allow such a claim as a preference, the court expressing inability to see any difference in principle resulting from the identity of the contracting party, whether it be decedent or his personal representative.

The above cases which have allowed tombstone costs as a preference have stretched "funeral expenses", which are expressly given priority by both the Act of 1834 and its successor, section 13(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, to include tombstones. And they have relied on appellate court cases which, as pointed out in Gordon's Estate, all involve solvent estates, and hence stand for no more than that, as far as heirs or legatees are concerned, a tombstone is a proper charge against the estate. It does not necessarily follow from those cases that such a charge is equally proper when it must come out of the pockets of decedent's creditors. Nor can it be asserted with any degree of assurance that those cases establish that tombstones are proper charges in solvent estates because they constitute part of the funeral expenses.

McGlinsey's Appeal, 14 S. & R. 64, 66 (1826), loosely refers to a tombstone as "the principal article of expense", after mentioning "funeral expenses" generally. France's Estate, 75 Pa. 220 (1874), makes a definite distinction between funeral expenses and a tombstone, allowing a claim for reimbursement on behalf of decedent's widow, who paid for both, as to funeral expenses but denying it as to the tombstone. Porter's Estate, 77 Pa. 43, 49 (1874), states that: "This court has recognised the expense of a suitable tombstone over the grave of a decedent to be a legitimate item of credit in the accounts of an executor, even when no provision on the sub-

ject was made in the will . . .", but contains no suggestion that it is considered as part of the funeral expenses. In Bainbridge's Appeal, 97 Pa. 482 (1881), testator directed payment of his funeral expenses and then the erection of a monument out of the residue. Again there is no indication of necessary connection between the two. Webb's Estate, 165 Pa. 330, 334 (1895), is somewhat closer, stating that "the act of burial includes all the usual incidents of decent burial, of which one, at least, is the erection of a suitable tombstone." Lutton's Estate, 17 Pa. Superior Ct. 342, 343 (1901), describes a tombstone as "not a debt of the decedent, but . . . a reasonable expense incurred in the settlement of his estate." Mitchell's Estate, 79 Pa. Superior Ct. 208, 211 (1922), makes the sharpest distinction. There decedent was the wife, who directed payment of her funeral expenses in her will, but the surviving husband elected to take against the will. It was held that the husband's election made him liable for the funeral expenses, "but the cost of erecting a tombstone at the grave of a wife is different, as this is not a necessary part of the wife's funeral expenses and the surviving husband could not be sued for its cost", so credit therefor was allowed against the wife's estate.

The foregoing review shows that the precise character of a tombstone charge has yet to be settled, and although it may be, as stated in 3 Schouler on Wills (6th ed. 1923) sec. 2762, "in the nature of funeral expenses," it has not been held to be a part of funeral expenses, much less an indispensible part in an insolvent estate. Even were it part of the total funeral expenses in the ordinary case, there would still be the question whether the legislature intended to include it as part of the "funeral expenses" which are given priority by section 13(a) of the Fiduciaries Act of 1917, supra.

Lutton's Estate, supra, suggests another possible category into which to place a tombstone, and which is brought out more clearly by Kreeger's Estate, 277 Pa. 326 (1923). The question there was whether, under the Act of June

20, 1919, P. L. 521, the clear value of the estate subject to transfer inheritance tax should be determined by including the cost of a tombstone, or whether that was deductible. Section 2 of that act provided that "the only deductions to be allowed from the gross values of such estates shall be the debts of the decedent and the expenses of the administration . . .". As the act did not expressly permit a deduction for a tombstone (or for funeral expenses either), the deductibility could only be achieved by construing it as part of decedent's debts or as an administration expense. Rejecting the former possibility, the court held that by the use of the words "expenses of administration", the legislature intended to include the cost of an appropriate tombstone or other grave marker.

By the Act of May 16, 1923, P. L. 244 (Kreeger's Estate was decided by the Orphans' Court of Philadelphia County on October 19, 1922, and by the Supreme Court on April 30, 1923), section 2 of the Inheritance Tax Law of 1919 was amended by expressly including as deductions from the gross estate "the expenses of the burial of the decedent, and the expenses of erecting at the grave of the decedent a suitable tombstone, monument or marker". The further amendatory Act of July 12, 1923, P. L. 1078, changed this wording to "reasonable and customary funeral expenses . . . reasonable expenses for the erection of monuments or gravestones, grave and lot markers," and added cemetery trusts as deductions. These provisions have survived several subsequent amendments and still stand in the last amendment, by the Act of June 24, 1939, P. L. 721.

Kreeger's Estate is, therefore, no longer necessary or effective. Does it follow, because Kreeger's Estate held the legislature intended to include the cost of a tombstone in the phrase "expenses of administration" as used in the Inheritance Tax Law of 1919, that the cost of a tombstone is also an administration expense insofar as priori-

ties in the distribution of an insolvent estate are concerned? We think not. While the amendments of 1923 to the Inheritance Tax Law indicate that the legislature did intend to allow the expenses of funerals and tombstones as deductions, they do not corroborate a construction of legislative intent to grant such status as constituting a *part of administration expenses.* On the contrary, an entirely separate category is created for these expenses. They are treated sui generis; neither as part of a decedent's debts, nor as part of the expenses of administering his estate. It is further significant that this new and separate category consists of two parts: (1) funeral expenses, (2) expenses of monument or gravestone. This would seem to substantiate the cases holding that the cost of a tombstone is not part and parcel of the funeral expenses.

Section 13 (*a*) of the Fiduciaries Act of course contains no such expression as "expenses of administration", or provision for their payment. The act assumes, and it is never questioned, that such expenses, which are necessary in order to gather, manage, and distribute the estate according to law, must be paid first and in full. It sometimes happens that the assets of an estate are insufficient to pay in full even the creditors who are given priority by section 13 (*a*). If the cost of a tombstone is for all purposes an administration expense, it is by no means impossible that the monument maker would be entitled to payment in full, whereas the undertaker, physician, hospital, etc., would be compelled to prorate their claims. The anomaly of such a result, from which there would be no logical escape, together with the distinctions already mentioned, demonstrate that the rule of Kreeger's Estate cannot be lifted from its attendant circumstances and applied in a case like that before this court.

Having so thoroughly covered funeral expenses and tombstone expenses in the Acts of 1923, supra, when it comes to computing inheritance tax, it does seem that if the legislature intended to confer preferred status to the

cost of a tombstone, this could and would have been done by amendment to section 13 (a) of the Fiduciaries Act. Reconsideration of the question has yielded nothing establishing error in Gordon's Estate, or why 27 years later the opposite should be held. This court is still of the opinion that the cost of a tombstone is not a proper charge in an insolvent estate.

Under this conclusion, Stitzel's Estate does not apply. That case limits the authority of the court only where a charge is inherently proper, and the only question is whether the amount thereof is reasonable or excessive. It is obvious that that question cannot be decided justly without evidence on all the factors involved. But where, as here, it is plain on the face of the account that credit has been taken for an item for which any charge would be improper—regardless of its amount—then the court has not only the power but the duty to disallow the credit and surcharge accountant. The question here is not of fact, but of law. No conceivable kind or quantity of evidence that accountants might produce, if given the opportunity, would be relevant to a decision of this question. We hold that the auditing judge was entirely justified in surcharging accountants for the tombstone credit taken in their account and refusing the additional credit requested at the audit. Accountants' exceptions must be dismissed.

No exceptions were filed to the auditing judge's refusal to allow the full claim of $336.60 for funeral expenses and to the reduction thereof to $300, so no question about it is now before the court. However, it may be well to point out, lest this appear inconsistent with what is said above, that such action was questioned and sustained in another case. See opinion filed this day sur exceptions to adjudication in Hughes' Estate, 56 Montg. 81.

And now, February 29, 1940, the exception of W. Stanleigh Krewson and James H. Thomas, administrators c. t. a., to the adjudication of June 27, 1939, are dismissed, and said adjudication is confirmed absolutely.