# Skeer's Estate.

*Executors and administrators—Failure to collect assets—Negligence—Surcharge.*

Where one member of a partnership consisting of two persons, dies at a time when the firm had ceased to engage in active business, and the assets are being liquidated by a son of the other partner, and the executrix who was also the widow of the deceased partner, makes no attempt to collect the interest of her husband which amounted to over fifty thousand dollars, but gives a power of attorney to the son of the other partner who was also deceased, and upon the death of such son after four years, gives a power of attorney to another son of the other partner, under which he acts for five years, until the whole estate is lost by the embezzlement of the attorney, and it appears that the executrix from family and social considerations made no attempt to secure an accounting or a settlement from either of the brothers, although if she had acted promptly she could have saved the whole amount, she will be surcharged with the loss at the instance of the other parties interested in the estate.

Argued March 5, 1912. Appeal, No. 89, Jan. T., 1912, by Charles O. Skeer, et al., from decree of O. C. Carbon Co., dismissing exceptions to auditor's report in estate of Charles O. Skeer, deceased. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to report of Jacob C. Loose, Esq., auditor. Before HEYDT, P. J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John G. Johnson,* with him *Freyman & Nothstein, C. Wilson Roberts* and *H. Montgomery Smith,* for appellants.—The plaintiff was guilty of supine negligence: Chambersburg Saving Fund Association's App., 76 Pa.

203; Charlton's App., 34 Pa. 473; Neff's App., 57 Pa. 91; Shaffer's App., 46 Pa. 131; Gardner's Est., 199 Pa. 524; Keller's App., 8 Pa. 288; Merkel's Est., 131 Pa. 584; Webb's Est., 165 Pa. 330; Stokely's Est., 19 Pa. 476; Wills' App., 22 Pa. 325; Lazarus's Est., 4 Kulp 24.

*A. H. Wintersteen,* with him *Laird H. Barber,* for appellee.—An auditor's findings are conclusive: Thompson's App., 103 Pa. 603; Whiteside's App., 23 Pa. 114; Loomis's App., 22 Pa. 312; Bedell's App., 87 Pa. 510; DeWolff's Est., 181 Pa. 187.

The executrix was not negligent: Webb's Est., 165 Pa. 330; Bartol's Est., 182 Pa. 407; Sample's Est., 189 Pa. 385; Fahnestock's App., 104 Pa. 46.

OPINION BY MR. JUSTICE POTTER, May 13, 1912:

This proceeding was the adjudication of the fourth and final account of Ellen B. Skeer, administratrix of the estate of Charles O. Skeer, deceased. Exceptions to the account were filed by the collateral heirs of the decedent, in which they alleged that the administratrix was guilty of gross negligence in failing to collect a large amount of money due to the estate from those who were charged with the settlement of the affairs of the firm of Linderman & Skeer.

The court below appointed an auditor to consider the exceptions and to report a schedule of distribution. The only exceptions which are here brought in question are those relating to the interest of the decedent in the firm of Linderman & Skeer. This interest as shown by a trial balance taken shortly after the death of decedent, was valued at $161,876.34, but in the inventory and appraisement filed in the register's office, it was appraised at $57,211.96. The auditor, however, refused to surcharge the accountant with any part of this sum, and dismissed the exceptions relating to the failure of the administratrix to realize upon this asset. The court

below overruled the exceptions to the auditor's report, and confirmed it absolutely. The exceptants have appealed, and contend that the evidence showed that the accountant was guilty of gross negligence in failing to collect the amount due to the estate from the firm of Linderman & Skeer, and that she is liable for the amount collected and embezzled by her agent and attorney in fact, Garret B. Linderman.

From the facts found by the auditor it appears that Charles O. Skeer, who resided in Mauch Chunk, died March 13, 1898, intestate, leaving a widow and collateral heirs. Letters of administration were granted to the widow, who filed an inventory and appraisement showing personal property of the appraised value of $850,477.53, the interest of decedent in the firm of Linderman & Skeer being appraised at $57,211.96. The firm was originally composed of Dr. G. B. Linderman, of South Bethlehem, Pa., and Charles O. Skeer, the interest of the latter in the partnership being nine-twenty-eighths. The firm was originally engaged in the operation of certain leased coal mines, but prior to Skeer's death it had ceased to operate mines or to engage in active business. At the time of Skeer's death, the winding up of the firm's business was in the hands of Robert P. Linderman, a son and one of the executors of Dr. G. B. Linderman. Mrs. Skeer, as executrix of her husband, gave a power of attorney to R. P. Linderman, authorizing him to act for her in the settlement of the business. Up to July 1902, Mrs. Skeer received the sum of $31,000 on account of the interest of Skeer's estate in the firm. She received nothing more during the lifetime of R. P. Linderman, who died in 1903. On December 8, 1903, Mrs. Skeer, as administratrix, gave to Garret B. Linderman, another son of Dr. Linderman, and a brother of R. P. Linderman, a power of attorney to represent her in the settlement of the firm's business. It seems that this was done without the knowledge or consent of any of the collateral heirs of C. O. Skeer, nor

does it appear that any of them were informed of the existence of the power of attorney. On October 8, 1906, she received from Garret B. Linderman $10,000, making an aggregate of $41,000 paid her on account of the interest of her husband's estate in the firm. On May 16, 1903, the book value of that interest was stated as $130,876.34.

Garret B. Linderman continued in charge of the settlement of the firm business, with Mrs. Skeer's consent, until January 1908, when he was adjudicated a bankrupt, and it then transpired that he had collected and appropriated to his own use moneys of the firm, of which the share of the Skeer estate was $126,734.43. Deducting the sum of $7,500 paid by a surety company, the loss of the estate by reason of Linderman's defalcation was $119,234.43. No action of any kind was ever brought by Mrs. Skeer to compel a settlement of the Linderman & Skeer partnership business, or to secure an accounting from either R. P. Linderman or Garret B. Linderman. The record shows that after the death of C. O. Skeer, the estate of Mr. Linderman collected from the firm of Linderman & Skeer, a total sum of $239,000, of which $157,000 was paid during the years 1906 and 1907. During the same period Mrs. Skeer, as stated above, received only $41,000, whereas her proportionate share would have been some $90,000.

The question of accountant's liability is to be determined by inferences to be drawn from facts which are not disputed, and by the application to these facts of sound and established principles of law. The rule as to the liability for failure to collect assets of the estate is well settled. In Calhoun's Estate, 6 Watts 185, 188, Mr. Justice ROGERS said: "All that a court of equity requires from trustees is common skill, common prudence and common caution. Executors, administrators or guardians are not liable beyond what they actually receive unless in case of gross negligence; for when they act as others do with their own goods and with good

faith, and are not guilty of gross negligence, they are not liable." The language above quoted was repeated by Mr. Justice. SHARSWOOD in Neff's App., 57 Pa. 91, 96, and Mr. Justice GREEN in Webb's Est., 165 Pa. 330, 336; Bortol's Est., 182 Pa. 407, 410, and Semple's Est., 189 Pa. 385, 390. In Webb's Est., 165 Pa. 330, 336, Calhoun's Est., (6 Watts 185) is referred to as "the leading case in Pennsylvania on this subject."

Did the accountant here use common prudence, and exercise common caution, or was she grossly negligent? She took charge of the estate on May 21, 1898. At that time, as stated above, the firm of Linderman & Skeer was not actively engaged in business. Its affairs were being closed up by Robert P. Linderman, acting under powers of attorney from the executors of his father, and from C. O. Skeer. After the death of the latter, his administratrix, the present accountant, permitted R. P. Linderman to remain in charge of the settlement of the affairs of the firm. This arrangement continued for some five years, when R. P. Linderman died, prior to December 8, 1903, without having made settlement of the business of Linderman & Skeer, and without submitting any account to the administratrix. At that time, December 8, 1903, Mrs. Skeer, as administratrix, gave a power of attorney to Garret B. Linderman, authorizing him as her representative to settle the affairs of the firm. No final settlement of the firm's business was made, and some four years later, in 1907, it was discovered that Linderman had appropriated to his own use funds of the Skeer estate amounting to $126,734.43. No suit for an accounting was brought by Mrs. Skeer, though more than nine years elapsed between the grant of her letters of administration and the discovery of Garret B. Linderman's embezzlement. It appears from the testimony that Mrs. Skeer and her attorney frequently discussed the advisability of bringing suit for an accounting, and it was agreed that it ought to be

done.  But it was not done because of promises of ad·
justment made by the Lindermans, and because of Mrs.
Skeer's personal and social relations with them.  After
the defalcation of Garret B. Linderman became known,
Mrs. Skeer brought no suit against him beyond filing
proof of the debt with the referee in bankruptcy.  Mrs.
Skeer testified that when she gave the power of attor-
ney to Garret B. Linderman, she did it with hesitation,
although the executors of the Linderman estate re-
quested it, and her own attorney advised it.  She said
she never trusted him, and thought that he was cun-
ning.  But in spite of this feeling, she did not con-
sider taking a bond from him, as security for the faith-
ful discharge of his duties, because she thought it would
have been considered an insult to ask it of him.  It ap-
peared that among other assets, the firm of Linderman
& Skeer owned valuable real estate in Hartford, Conn.
In 1906, upon the petition of Mrs. Skeer, Garret B.
Linderman was appointed ancillary administrator of
C. O. Skeer at Hartford, and as such sold the interest
of the Skeer estate in the real estate there, from which
a net balance of $19,524.09 was realized, all of which
was embezzled by Linderman.  The Surety Company
which was upon his bond as administrator, paid $7,500
as a compromise settlement, and this amount is in-
cluded in the present account.  Linderman had pre-
viously sold personal property of the firm at Hartford
for $50,045.67.  As above noted, the books of Linder-
man & Skeer showed that after the appointment of the
appellee as administratrix, there was paid to the estate
of G. B. Linderman, $239,000, while the Skeer estate
received only $41,000.  This was far below the amount
to which the Skeer estate was entitled.  The only excuse
given for the failure to settle the partnership business,
during this long period of nine years, was the alleged
inability to dispose of the Hartford property, and the
pendency of two law suits.  It appears, however, that
the Hartford property was entirely independent of the

other business, and no reason was shown why it should have interfered with the settlement of the remainder of the firm's affairs. One of the law suits in question was settled soon after Mr. Skeer's death, and the other involved a liability at the most of $25,000.

We cannot regard the conduct of the administratrix in permitting this long delay in the settlement of the interest of the estate in the partnership as being anything else than gross negligence. It was her duty, as was said in Chambersburg Saving Fund Ass'n Appeal, 76 Pa. 203, 228; ...... within a reasonable time to maker proper efforts to convert all the assets and securities into money for distribution." And if she failed to make such efforts, she "was guilty of gross negligence and became liable for any loss thereby sustained." In Johnston's Estate, 9 W. & S. 107, 109, Mr. Justice ROGERS said: "It is a case, not of ordinary care, but of gross negligence, for he has failed to show that he made any effort whatever in proper time to recover the money. A mere application for payment, without more, would not have availed him. To entitle him to a credit, he must, in addition, prove that he took legal steps to recover the sum due, or that, from the notorious insolvency of the debtors, a suit would have been useless. But, so far from this being true, the probability is that if ordinary diligence had been used the money would have been recovered." This language fits accurately the facts of the present case. The record shows that while Mrs. Skeer and her counsel frequently discussed the bringing of suit, and were convinced of the propriety of so doing, yet for reasons which were largely personal and social, this obviously prudent step to protect the estate was not taken. The delay in the settlement of the partnership affairs was unreasonable, even at the date of R. P. Linderman's death, as more than five years had then elapsed. The demands of ordinary prudence certainly required sharp insistence upon a settlement at that time. The administratrix, however, ap-

parently made no investigation as to the condition of
the firm affairs, but proceeded to give another power of
attorney to Garret B. Linderman, whom, at the time,
she said she distrusted. Notwithstanding her suspi-
cions, she left the control of the matter in his hands,
exercising very little, if any, oversight of his conduct
in representing her. Only one instance appears in
which she had an examination of the books made, and
that was in 1904, when she employed an audit company
to investigate the accounts of the firm. Their report
shows that a large amount of cash and negotiable securi-
ties was then on hand, which should have been promptly
distributed. That report also showed that in eight
years, salaries amounting to $25,446.70 had been drawn
from the firm for services which "were only nominal
and could not have required more than two to three
days annually." This report in itself should have been
enough to have placed any reasonably competent person
on guard. As noted above, a simple inspection of the
books of the firm in the year 1906 would have shown
that the agent and attorney in fact of the administra-
trix was paying large sums of money out of the firm to
the estate of his father in which he was interested, and
at the same time was failing to distribute anything like
a proportionate amount to the Skeer estate. This fact
would have appeared from such an examination of the
books as ordinary prudence would have suggested.

We can see nothing in the evidence to justify the in-
ference which the auditor drew from the facts, that the
conduct of the administratrix should be excused. No
reasonable explanation of the long delay in compelling
a settlement was given. The evidence points unmis-
takably to negligence in this respect. The delay of five
years until the death of R. P. Linderman was not justi-
fied. And the conduct of Mrs. Skeer in making no in-
vestigation at that time, and in proceeding to give
another power of attorney to a brother of R. P. Linder-
man, and in permitting him to continue for years the

same careless and unbusinesslike course of procedure, without requiring any security, and without compelling prompt, or reasonable settlements at his hands, can only be properly characterized as gross negligence upon the part of the administratrix. The record discloses nothing which affords any adequate excuse for a delay of nine years in securing to the estate the amount of its interest in a business which was in course of settlement, and whose assets were admittedly good, and whose conversion called for nothing but the exercise of reasonable business caution and activity. We are convinced that the failure of the administratrix to exercise common skill, common prudence, and ordinary business caution resulted in the loss of the interest of the estate, in the assets of the firm of Linderman & Skeer. To the extent of the value of this interest, which the administratrix failed to collect, and which was lost through the defalcation of her agent and attorney in fact, Garret B. Linderman, the administratrix must be surcharged.

The fourth, fifth, sixth, ninth, twelfth, fourteenth, fifteenth, sixteenth and twenty-second assignments of error are sustained. The decree of the Orphans' Court is reversed, and the record is remitted for further proceedings in accordance with this opinion.