# Dauler's Estate.

*Decedents' estates—Executors and administrators—Stock—Failure to convert—Loss—Surcharge—Improper surcharge.*

Executors who in good faith have retained bank stock left by testator and have subsequently accepted in exchange therefor other bank stock issued in pursuance of a consolidation plan, will not be surcharged for the amount at which the testator's stock could have been sold although the consolidated bank subsequently failed

and the new stock became worthless, where it appears that shortly after testator's death a financial panic rendered impossible the sale of the original stock at prices approximating its estimated value; that the consolidation was approved by the comptroller of the currency and that the dividends which the executors received were required by them to properly administer the estate and to pay legacies; under such circumstances it cannot be said that the loss was due to the failure of the executors to exercise that common skill, prudence and caution, which the law requires.

Argued Oct. 14, 1914. Appeal, No. 105, Oct. T., 1914, by Fred J. Close and Thomas F. Johns, Executors, from decree of O. C. Allegheny Co., Oct. T., 1913, No. 27, surcharging executors in estate of George H. Dauler, Sr., Deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Exceptions to executors' account. Before OVER, P. J.
The opinion of the Supreme Court states the facts.

Court surcharged the executors with $20,000 being the price at which certain national bank stock belonging to testator could have been sold, the retention of which resulted in loss to the estate. The executors appealed.

*Error assigned* was the decree of the court.

*George C. Wilson,* of *Wilson & Evans,* for appellants, cited: Skeer's Est., 236 Pa. 404; Semple's Est., 189 Pa. 385; Knight v. Plimouth (Lord), 3 Atk. 480; Neff's App., 57 Pa. 91.

*D. C. Jennings,* with him *W. K. Jennings* and *John H. Jordan,* for appellees, cited: Johnston's Est., 9 W. & S. 107; Skeer's Est., 236 Pa. 404; Merkel's Est., 131 Pa. 584; Rorabaugh's Est., 229 Pa. 377; Oil Well Supply Co. v. Ulrich Stewart Mfg. Co., 234 Pa. 378.

OPINION BY MR. JUSTICE ELKIN, January 2, 1915:
The learned court below surcharged the executors

with $20,000 being the value fixed upon one hundred shares of the capital stock of the Second National Bank of Pittsburgh which belonged to the testator at the time of his death, July 4, 1907. This appeal is from the decree directing the surcharge to be made in the distribution of the estate. At the time of his death and for more than thirty years prior thereto the testator had been a stockholder and director of the Second National Bank which was considered sound and conservative by everyone in the community. A few months subsequent to his decease a financial panic spread over the country which resulted in the closing of the Pittsburgh Stock Exchange to sales and quotations of bank stocks for more than two years. The evidence shows that for a period of almost six years after the death of the testator only ten shares of the capital stock of the Second National Bank were sold on the public exchange. It is also in evidence that during this entire period it was difficult, if not impossible, to sell bank stocks in that community except at prices far below what was deemed to be their actual value. This was the situation which confronted the executors in the disposition of the property and the settlement of the estate which is now the subject of distribution. The bank stock in question was only a small part of the estate of the testator. The executors filed their first account in December, 1908, accounting for moneys received up to that time. The present is the second partial account in which the accountants charge themselves with $178,775.11.

In May, 1913, there was a consolidation, of the First and Second National Banks of Pittsburgh. The stockholders of each institution voted in favor of the consolidation, and at the time it was deemed wise and advantageous by all of the interested parties. The consolidation was made with the approval of the comptroller of the currency under the authority of an act of congress. A very short time after the consolidation was perfected the comptroller of the currency took charge of the af-

fairs of the bank which was then forced to close its doors. This resulted in very greatly depreciating, if not entirely destroying, the value of the capital stock. It is because of this unforeseen and unexpected bank failure that the present controversy has arisen.

The question for decision here is whether under the facts stated the loss should be borne by the estate or fall upon the shoulders of the executors. The law requires common skill, common prudence and common caution, in the administration of estates by trustees. It has been held over and over again that executors, administrators and guardians are not liable beyond what they actually received unless in case of gross negligence. This rule has been iterated and reiterated from Calhoun's Est., 6 Watts 185, to Skeer's Est., 236 Pa. 404. Under the rule just stated the accountants in the present case are not liable to be surcharged unless they were grossly negligent in the performance of their duties in the administration of the estate. In this connection the finding of the court below should not be overlooked. The learned auditing judge said:

"There is no question that the executors acted in good faith, and for what they had good reasons to believe, was for the best interests of the estate. The testator had been a stockholder and director in the Second National Bank for thirty-two years prior to his death; there was every reason to believe the stock was a valuable asset of the estate; it paid large dividends; the market for bank stocks was very much depressed; they had to pay the debts, the taxes on the unimproved real estate, which had not yet been sold, and $6,000 a year for five years to the two daughters. The $6,000 of dividends realized from this stock were applied to these payments. It is highly probable this exceptant and the other legatees' would have objected to any sale made in the depressed condition of the market prior to 1912. This probability is much strengthened by the fact that but one of the legatees has filed exceptions to the account, and he does

not appear to have ever requested the executors to sell it, nor sought for a distribution of the residuary estate until August, 1912."

How can it be justly said under a rule of law which requires common skill, common prudence and common caution, that the executors were grossly negligent because of their failure to sell the bank stock in question under the facts disclosed by the present record? The testimony shows that there was no market for bank stocks in that community during the period this particular stock was held by the executors. The bank was paying large dividends to its stockholders, and no doubt the executors believed that a stock with such large earning power would have a much greater market value when the general business conditions improved and became normal. The attitude of the executors with respect to this stock was neither arbitrary nor unwarranted. Their good faith is not questioned and their judgment has the confirmation of the other stockholders who evidently held their stock in the belief that the bank was perfectly sound and that the market value of its shares would greatly appreciate when general financial conditions improved. To say that the executors were grossly negligent under such circumstances would require us to hold that the rule relating to the administration of estates by trustees has no application. The learned court below relied very largely on Skeer's Estate, above cited, in reaching the conclusion that it was necessary to surcharge the executors in the present case. It is true there was a surcharge in that case, but the facts were entirely different in many essential particulars. But even in that case the rule requiring common skill, common prudence and common caution was clearly pointed out and emphasized as being applicable to cases of this character. The accountant in that case was surcharged because in the opinion of this court the rule was disregarded. Under the facts of the present case we are all of opinion

that the executors cannot be held to have been grossly negligent in the discharge of their duties.

The third, fourth and fifth assignments of error are sustained.

Decree reversed and record remitted in order that distribution may be made in accordance with the views hereinfore expressed. Costs of this appeal to be paid out of the estate.