## Stotesbury Estate.

Argued November 21, 1956. Before JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Gordon A. Block,* with him *Maxwell Strawbridge, Edward Shippen Morris,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellants.

*Thomas H. W. Jones,* with him *Edward S. Morris,* and *Cuthbert H. Latta,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 24, 1957:

The appellants, Frances H. Baird, Natalie E. Tyson and Edward S. Hutchinson, are the life beneficiaries of a trust created by the will of their grandfather, Edward T. Stotesbury, who died *May 16, 1938.* With respect to the remainders, the will provides that upon the death of each of the above-named grandchildren, the share of principal from which such grandchild was receiving the income at the time of his or her death shall be paid over and distributed to the children or lineal descendants of such deceased grandchildren, per stirpes and not per capita. The testator expressly directed, however, that "no child adopted by my said granddaughter, Natalie E. Tyson, shall be considered in any way entitled to participate in the estate of my said granddaughter." Natalie E. Tyson has three adopted, and no natural, children.

The testamentary trustees resigned on July 1, 1947. The orphans' court accepted the resignation and appointed as substituted trustees the Girard Trust Company (now Girard Trust Corn Exchange Bank) and the three life tenants. On April 14, 1952, the substituted trustees filed an account. At the same time, they petitioned the court to divide the trust into three separate trusts for the benefit, respectively, of the three life beneficiaries above mentioned and requested that the trust company and the respective life beneficiary be appointed trustee for each of the three trusts. The account was audited and the petition heard on June 11, 1952, and on August 20, 1953, an adjudication, confirming the account, was entered which also separated the trust into three trusts and appointed the trustees as prayed for in the petition.

On December 29, 1955, the three individual life tenants filed a petition for review of the adjudication and schedule of distribution entered by the court on Au-

gust 20, 1953. The court issued a citation to the trustees of the three trusts and to the guardian ad litem for minors *in esse* and trustee ad litem for all unborn and unascertained persons having a possible interest in the trusts to show cause why the review prayed for should not be granted. The corporate trustee answered, submitting itself to whatever order the court might make in the premises. The guardian and trustee ad litem also answered but denied the right of the petitioners to the review sought, praying that the petition be dismissed.

The petition set forth in material part that in the account audited and adjudicated on August 20, 1953, there were shown "stock dividends, stock exchanges, and stock rights, and capital gains and like items . . . all of which were included in the principal account"; that the "petitioners have since learned that this was an error of law, and that the same or some of the same should have been apportioned and included in income rather than in principal"; and that "No distribution of principal has been made which would be affected by reason of any hearing or re-audit of the said account."

After a hearing on the petition and answers, the court entered a final decree dismissing the petition. From that decree, the income beneficiaries have brought this appeal.

The right of any party in interest to a review of a fiduciary's account, auditor's report, adjudication or decree of distribution within five years after the final confirmation of the account is clear where the petitioner specifically sets forth the errors therein, that right and justice require the granting of the relief sought and that none of the property involved has been distributed by the personal representative in accordance with a decree of court before the filing of the petition: Section 721 of the Fiduciaries Act of 1949, P. L. 512, 20 PS §320.721.

Here, the petition was filed within two years and four months of the confirmation of the account and distribution sought to be reviewed. No part of the property erroneously allocated in the account to principal has been distributed but continues to be retained intact by the trustees just as it was at the time of the adjudication.

That the petitioners did not raise the question at the time of the audit and confirmation of the account or upon the entry of the adjudication is not valid ground for denying the petitioners the desired relief. In *Willing's Estate,* 288 Pa. 337, 343, 135 A. 751, this court said with respect to the power of an orphans' court to review for errors in confirmed accounts, adjudications or decrees of distribution, "But the power formerly existing has been extended, and relief should be granted where justice and equity require, and no one suffers thereby: Troutman's Est. supra; Turnbull's Est., 88 Pa. Superior Ct. 482. Irrespective of any legislation, the orphans' court possesses an inherent discretionary power 'to correct its own records in the interest of justice, *even to protect parties from the effect of their own mistakes and blunders'*: Sloan's Est., 254 Pa. 346, 350" (Emphasis supplied). See also Hunter's Pennsylvania Orphans' Court Commonplace Book, Vol. II, p. 1154.

The learned court below refused the review because it deemed unmeritorious the reason offered by the petitioners for not having raised at the time of the audit or adjudication their right to apportionment, as income, of certain receipts by the trustees. The petitioners had urged that, while we had held in *Crawford Estate,* 362 Pa. 458, 67 A. 2d 124 (1949), that the Uniform Principal and Income Act of 1945, as amended in 1947, would be unconstitutional if construed as applying to trusts

created prior to the date of that enactment, it was not entirely clear from the decision in *Crawford Estate* that the rule of apportionment was applicable to distributions of corporate accumulations arising or accruing after the date of the Uniform Principal and Income Act and that it was not until our decision in *Warden Trust*, 382 Pa. 311, 115 A. 2d 159 (1955), that the applicability of the apportionment rule to corporate distributions of accumulations arising or accruing after the date of the Uniform Principal and Income Act to trusts created before that date was settled. And, the petition for review in this case was filed shortly after our decision in *Warden Trust*, supra. But, the court below insisted that the petitioners should have known from the decision in *Crawford Estate*, supra, that they were entitled to apportionment of the corporate accumulations distributed to the trustees.

But, however that may be and although the petitioners' quiescence until *Warden Trust* would be decided was well justified, why the petitioners had not raised the question earlier is wholly irrelevant to the issue presented by the undisputed facts as disclosed by the pleadings. The petitioners are well within the five-year period prescribed by the statute; they aver an error of law in the account and schedule of distribution which allocates to trust corpus money to which they are entitled as apportioned income; that no part of the money to which they thus lay claim has been distributed by the fiduciaries under a decree of the court; and that equity and justice require that the relief prayed for be granted.

While all three appellants are entitled to receive as beneficiaries under the testator's will what the law accords to them, Natalie E. Tyson's situation presents a special and compelling equity. Her three adopted chil-

dren are precluded by the testator's express direction from sharing in remainder the trust corpus from which their mother receives the income during her life. If a portion of such income which has been allocated to corpus because of an error in the accounting is permitted to remain there, it is manifest that it can never go to Mrs. Tyson or, through her, to her children who will never share in the trust property in their own right. The apportionable income is by no means a negligible sum. According to a statement by the corporate trustee, which keeps the books and account of the trusts, the amount now held in the corpus which is apportionable to the three life beneficiaries aggregates $30,000.

The court below took occasion to note that "allowance of review for the reason set forth in the instant case would encourage the eruption of similar proceedings seeking readjustments between principal and income in a great many trusts where for a considerable period of time such matters have been long considered settled." While the court simultaneously avowed that "this observation is not the basis for dismissal of the present petition", it is quite evident, since no valid legal reason for the court's action appears elsewhere in the opinion, that the fear of increased litigation played a larger part in the court's thinking than what it seemingly apprehended.

Curiously enough, the identical idea was flatly rejected by a predecessor judge of the same court when passing upon a life beneficiary's request for the review of an adjudication which had failed to properly allocate income apportionable out of a distribution to the trust estate of accumulated corporate earnings: see *Wilford Estate,* 70 Mont. Co. L. R. 83, 84 (1953). The court there cogently stated,—"The chief preliminary objections of the corporate trustee is the undue burden

put upon it in making the necessary calculations, involving intricate research, in the particular case and encouraging the eruption of similar proceedings seeking readjustments between principal and income in trusts where such matters have been long deemed settled. But *Crawford's Est.*, 362 Pa. 458 (1949), holds that income such as this in question, once it is found to be income, is the vested property of the income beneficiary and it must be given to him. True it is, that if he fails to assert his right and mislead the fiduciary to pay it out elsewhere, he cannot compromise the position of the fiduciary, and would be adjudged guilty of laches if he sought to hold the fiduciary. But as long as it remains in the reach of the court of proper jurisdiction, it is, according to this authority, his and it must be awarded to him when he demands it in a proper proceeding."

The action of the court below in the instant case was in disregard of the plain intent and purpose of Section 721 of the Fiduciaries Act of 1949, cit, supra, and constituted a manifest abuse of discretion.

Decree reversed and record remanded with directions that the petition be reinstated and a decree entered granting the review prayed for; costs on the appeal to be borne by the trust estates equally.