## Mathers Estate

*Smith, Aker, Grossman & Hollinger* and *Schnader, Harrison, Segal & Lewis,* for petitioners.

*Richard N. Spare* and *Robert Trucksess,* for Commonwealth.

*Justin G. Duryea* of *Duryea, Larzelere & Meinzer* and *John Norris,* for distributees.

TAXIS, P. J., November 17, 1964.—This is a petition for the review of an adjudication confirmed absolutely on June 25, 1961. The account audited was that of Eliza C. Mathers, testamentary trustee and widow of decedent, as stated by her executor, Girard Trust Corn Exchange Bank (now Girard Trust Bank). In the adjudication, inter alia, there was awarded to accountant the sum of $24,000 ". . . as a reserve for payment of possible taxes and other costs." A substantial portion of this sum, together with some income, remains undistributed, and the instant petition seeks review and redistribution as to that fund.

Petitioners are Ruth M. Richardson and Janet M. Woolston, daughters of decedent and Eliza C. Mathers. Mr. and Mrs. Mathers had another daughter, Dorothy Brooks Summers, who predeceased her father, leaving two children, Virginia Summers Martin and Paul D. Summers, Jr. Respondents include the latter two persons, the accountant, the Register of Wills of Montgomery County, and Drew J. T. O'Keefe, Esq., United States Attorney for the Eastern District of Pennsylvania.

Frank F. Mathers died on August 22, 1930, leaving a will which created a trust of his entire residuary estate. To his wife he left the entire net income for her life, and upon her death ordered his trustee,

". . . to pay absolutely one-half of the net principal of my said estate, or so much thereof as shall remain, in accordance with the terms and conditions contained

in the last Will and Testament of my said wife, Eliza C. Mathers, and in the event of my said wife, Eliza C. Mathers, failing to leave a last Will and Testament, or an instrument in the nature thereof, disposing of her share or interest hereunder, then in trust to pay said one-half of this trust estate, or so much thereof as shall remain, unto the right heirs-at-law of said Eliza C. Mathers; and to pay absolutely one-sixth of the net principal of my said residuary estate unto each of my said children, Dorothy Brooks Mathers, Janet Mason Mathers, and Ruth Bernard Mathers . . ."

Mrs. Mathers was then given a power to consume for her support, maintenance or assistance, or for any reason whatsoever to her appealing, the one-half part of the estate over which she had her power of appointment.

Eliza C. Mathers acted as trustee until her death on July 20, 1960. On April 30, 1946, she executed and recorded a document by which she did ". . . release, renounce, surrender and forever extinguish my aforesaid general power of appointment, RESERVING AND RETAINING THEREFROM unto myself for exercise by me by last Will and Testament or instrument in the nature thereof, . . . only a limited power to appoint such property over which said power of appointment may be operative to and among the descendants of my said husband, Frank F. Mathers, and their respective spouses." In addition, on October 29, 1946, Mrs. Mathers executed and recorded another document whereby she did ". . . release, renounce, surrender and forever extinguish the aforesaid power to use and consume principal of said trust, from this time forward."

The will of Eliza C. Mathers did not specifically exercise her power of appointment; however, she gave all the rest, residue and remainder of her estate one-half to her daughter, Janet Mathers Woolston, and

one-half to her daughter, Ruth Mathers Richardson. At the time of the adjudication for which review is sought, the accountant took the position that the will of Eliza C. Mathers acted as an exercise of the power of appointment, so that the one-half of the trust estate over which her power was effective passed equally to Ruth M. Richardson and Janet M. Woolston. The remaining one-half passed, by the will of Frank F. Mathers, one-third to each of his living children, and one-third to the two children of Dorothy Brooks Summers.

These children, however, took an opposing view, namely, that their grandmother's will did not exercise the power and that therefore they were together entitled to a full one-third part of the entire trust estate. By stipulation dated May 23, 1961, all parties agreed that the distributive shares in the estate should be one-third to Janet M. Woolston, one-third to Ruth M. Richardson, and one-sixth each to Virginia S. Martin and Paul D. Summers, Jr. This stipulation was approved by the court in its adjudication.

The instant petition seeks to alter this pattern of distribution, and paragraph 10 thereof sets forth the grounds therefore as follows:

"10. Your petitioners have been advised by counsel, and therefore believe and aver, that Eliza C. Mathers was entitled as a matter of law to one-half ($\frac{1}{2}$) of the residuary estate of Frank F. Mathers in fee. It appears, therefore, that your petitioners entered into the aforesaid stipulation and agreement under a mistaken impression of law, whereby irreparable loss will be worked upon your petitioners if the decree of distribution is not corrected as to the funds remaining in the hands of the accountant."

The matter has now been argued, and briefs filed.

Sections 721 and 983 of the Fiduciaries Act of April 18, 1949, P. L. 512, permit the review of the adjudica-

tion of a trustee's account within five years of its final confirmation, as to undistributed property. The respondents do not deny the right of petitioners to a review on the merits, and it is clear that if petitioners yielded up a portion of their interest in this estate under a mistaken concept of the applicable law, it is within the power of this court to correct the error as to property remaining in its jurisdiction: Stotesbury Estate, 387 Pa. 591.

The basic issues are these: Did Eliza C. Mathers receive a fee simple interest in one-half of her husband's trust estate under his will and the law applicable thereto, and if so, did she have such an interest at her death? Her failure to claim a fee during her lifetime would not preclude her personal representative from so doing: Johnson's Estate, 276 Pa. 291. This question has never been raised and ruled upon in this estate, and therefore no prior decision would preclude a finding that a fee existed: Emmerich Estate, 347 Pa. 307.

When viewed in the light of testamentary intent, this case does not present a substantial problem. Mr. Mathers gave his wife a life estate, a power to appoint the remainder interests generally, and a substantially unlimited right to consume principal. Although these might well be said to encompass all of the beneficial aspects of the ownership of property, the very detail of testator's language negates the finding of an intent on his part to give a fee simple interest, for he could have done so in a simple phrase.

Nor does Mrs. Mathers's interest increase because she was her own trustee: Fox's Estate, 264 Pa. 478. The trust was active, with all of the varying duties and responsibilities which fall upon the administrators of such trusts; the life tenant is not sole beneficiary, and this case is therefore clearly beyond those rules of law that merge legal and equitable interests in passive trusts: Erdman Estate, 352 Pa. 158.

The same rationale applies to the contention that the Rule in Shelley's Case is applicable. While that rule was still law in Pennsylvania when this trust arose, not being abrogated until July 15, 1935, P. L. 1013, it had early been settled that it could not be applied where the life estate and the interest given to the remainderman were not of the same quality; that is, both had to be equitable or both legal. In this case, Mrs. Mathers' estate was equitable only, being subject to an active trust, but the remainderman took a legal estate: Xander v. Easton Trust Co., 217 Pa. 485; Henderson's Estate, 258 Pa. 510. In addition, notwithstanding some lower court authority, the appellate courts have specifically stated that the doctrine does not extend to personalty: Mittinger's Estate, 132 Pa. Superior Ct. 475.

Petitioners rely mainly upon Dodson v. Ball, 60 Pa. 492. Therein the Supreme Court said, at page 497:

"The rule laid down is, that when an estate for *life* only is given, followed by a general power of appointment, and on failure to appoint, to children or to special heirs, the power to appoint will not enlarge the estate of the cestui que trust to a fee, and on a failure to appoint, the children or special donees in remainder take by purchase from the donor, and not by way of limitations as heirs of the cestui que trust: (citing cases). A limitation to heirs on a failure to appoint, unquestionably enlarges a life estate to a fee by the union of estates:. . ."

The above holding has been cited several times by lower courts dealing with petitions to terminate trusts. See Irwin Estate, 28 D. & C. 2d 123; Chase Trust, 6 Fiduc. Rep. 448; Horner Estate, 5 Fiduc. Rep. 648; and Reiniger's Estate, 36 D. & C. 163. In Erwin Estate the Orphans' Court of Philadelphia County exercised its discretion to allow partial invasion of the corpus of a large trust, on the ground that Dodson v. Ball pro-

vided a possible basis for the termination of the entire trust. In the other three cases, the rule in Dodson v. Ball was the stated basis for holdings that a life tenant seeking to terminate was the sole party in interest, having a fee simple interest, thus allowing termination upon his petition.

On the other hand, it has been directly held that a life interest plus a right to dispose or to consume, nevertheless does not create a fee in the life tenant: Warren's Estate, 320 Pa. 112; Davis Estate, 22 D. & C. 2d 755. The existence of a gift over, to other than the heirs of the life tenant, effectively precludes the enlargement of the life tenant's estate to a fee. As it is, therefore, the gift in remainder to the general heirs of the life tenant that explains the result in Dodson v. Ball, the court in that case was merely applying the Rule in Shelly's Case to its particular facts, without in any way indicating that a new or special rule of law was being announced.

In addition, Dodson v. Ball is distinct from the present case for another and important reason. In the former certain real estate was conveyed ". . . in trust to permit the plaintiff (settlor) to occupy, manage, let and demise, and take and receive the rents, issues and profits—for her sole and separate use, and for such other use or uses as she may deem proper, for the term of her natural life, without any let, hindrance, or molestation of any husband she may have, . . ." The trust also contained the provision that, at her decease, plaintiff's estate should pass as she would by her will direct, or if she did not so direct, then to her intestate heirs. Plaintiff married, was widowed, and then sought to terminate her trust. The Supreme Court discussed the nature of the trust in detail in its opinion, and concluded that it was a passive one only, with no special duties on the trustee during the lifetime of the plaintiff. It further held that the limitation over did not

change the passive nature of the trust and was added only to protect against the plaintiff's death during coverture. The court concluded as follows, on page 501:

"Upon the whole, then, the trust being passive, and the trustees not needed to protect any other interest, Mrs. Dodson being sui juris and competent to exercise any power which had been vested in the trustees, the ulterior trusts not being intended to protect any special interest, but being exactly commensurate with her own power and estate as absolute owner, there is no proper or useful purpose to uphold the trust, and it consequently fell when she became discovert."

Thus Dodson v. Ball dealt with the termination of a dry trust when its special purpose had been achieved, rather than generally with the estates created by specific language. It is actually of a much more limited significance than has been later ascribed to it, where its operative facts have become submerged in the broad language of its opinion. Its expansion is all the more to be regretted, where it has occurred, in the light of the present day judicial concern with the expressed intent of the testator or settlor, at the expense of artificial rules of law or construction. I hold, therefore, that Eliza C. Mathers did not take a fee simple interest in any portion of the estate of decedent.

It is also apparent that Eliza C. Mathers did not have a fee in any portion of her husband's estate at the time of her death, regardless of her initial interest. The releases executed by her in 1946 were binding and effective under the Act of June 1, 1945, P. L. 1337. Presumably these were made to take advantage of certain changes made in the United States Internal Revenue Code which gave rise to the enactment of this statute. With the limitations imposed by these releases on the right of Mrs. Mathers to deal with the trust res as her own, there is no basis whatever to argue the existence of a fee simple interest in her at her death.

And now, November 17, 1964, the petition for review is dismissed.