364 A.2d 1301

**ESTATE of Elnora J. STEPHENSON.**

**Appeal of Richard E. MELOY.**

Supreme Court of Pennsylvania.

Argued May 6, 1976.

Decided Oct. 8, 1976.

130

Donald L. Reihart, York, for appellant.

Smith & McCleary, Byron H. LeCates, York, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

This troubling estate case not only questions whether the Orphans' Court of York County had jurisdiction to decide the issues in the instant case, but also questions the propriety of the executor's actions in his representation of this estate. The appeal is from the decree of the Orphans' Court of York County dismissing for lack of jurisdiction appellant's petition for citation to show cause why the executor of the estate of Elnora J. Stephenson should not file an account so that it could be surcharged for its alleged failure to collect monies due the estate.

The first account of the executor of the estate of Elnora J. Stephenson was audited and confirmed by the Orphans' Court of York County on October 5, 1955. Although it had been captioned "First and Final," the executor never applied for a formal discharge from its fiduciary duties. At the time of the audit, the estate was found to be insolvent. The appellant is the sole residuary beneficiary under the will and now alleges that the

executor of the estate of Elnora J. Stephenson should have presented the claim of its testatrix as one of the possible beneficiaries under an alleged intestacy of the estate of Russell H. Bittinger. The appellant alleges that the failure to pursue this claim at the audit of the *Bittinger Estate* on December 22, 1965, deprived him of a substantial inheritance for which the executor is liable.

Russell H. Bittinger died August 25, 1945, a resident of Dauphin County, Pennsylvania. His will, duly probated there, appointed Charles E. Meckley the executor and provided that his residuary estate was to be held in trust by Charles E. Meckley for the benefit of testator's wife during her lifetime, together with the power to consume corpus subject to certain limitations, and upon her death "the principal and income of said trust estate, or so much thereof as shall remain, shall be paid to my said Trustee free and clear of the trust as his compensation for the management of my trust estate for the protection and benefit of my wife during her lifetime." There was no gift over in the event of the trustee's death or resignation.

Both the testator's wife, Nettie I. Bittinger, and the said Charles E. Meckley survived him. The latter duly filed a first and final account as executor in Dauphin County and administered the trust until his death on June 24, 1951. Following his death, upon petition of the still living widow, Capital Bank and Trust Company was appointed trustee under the will in the place and stead of Charles E. Meckley, deceased. The trust continued to be administered for the widow's benefit until her death on May 20, 1965. Meanwhile, Capital Bank and Trust Company, by merger, became National Bank and Trust Company of Central Pennsylvania.

The intestate heirs at law of Russell H. Bittinger, as of the date of his death in 1945, were his aforementioned widow; a sister, Elnora J. Stephenson; a brother, Frank E. Bittinger; and three children of a deceased brother,

Edward G. Bittinger, namely: Alice Nace, Beulah Yost, and Howard G. Bittinger.

Elnora J. Stephenson, through whom the petitioner claims, had died January 25, 1955, a resident of York County, Pennsylvania. Her will, duly probated in York County, made two small pecuniary bequests and then bequeathed the entire residuary estate unto the petitioner, Richard Meloy, who was not related to the testatrix. Central Trust Company of Harrisburg, Pennsylvania, the appointed executor, was granted letters testamentary.

The first and final account of said executor was filed in York County, presented for audit and confirmation to that court on October 5, 1955, and finally confirmed. The estate was insolvent and the balance on the account in the sum of $1,194.67 was awarded to the Commonwealth on account of its claim of $1,324.10 for public assistance granted to the decedent in her lifetime. The inventory filed in the estate contained the following at the end thereof:

> "*Note*: Decedent is a contingent remainderman in the Estate of Russel [sic] H. Bittinger late of the City of Harrisburg, for which Capital Bank & Trust Company, Harrisburg, Pa. is Substituted Trustee. The fund is subject to depletion by the widow of Russel [sic] H. Bittinger. No appraisal value is placed thereon due to its uncertainty."

The petitioner, Richard Meloy, had proper notice of the Stephenson audit and, in addition, was notified by a letter from the executor concerning the existence of the *Bittinger Trust* which concluded "If and when funds from this source are received by us as Executor, a further accounting will be made with the Court."

On March 26, 1965, the petitioner *wrote to Central Trust Company, as executor of the Stephenson Estate, inquiring as to the status of the Bittinger Estate, and also wrote to Capital Bank and Trust Company on March 31, 1965.* By this time, Central Trust Company had, by

merger, also become National Bank and Trust Company of Central Pennsylvania. He received a reply from John F. Warden, Assistant Trust Officer of the latter, on April 9, 1965, advising that the Bittinger widow was still living and that "We will notify you of any action as to distribution of the trust sometime after her death."

As above noted, the widow died about a month after this letter to the petitioner, and National Bank and Trust Company of Central Pennsylvania, successor to Capital Bank and Trust Company, filed its first and final account (as successor trustee in the *Bittinger Trust* in the Orphans' Court of Dauphin County) for audit on December 22, 1965. The petitioner was given no notice of the widow's death or the Bittinger audit and did not learn of either until January 13, 1969, when he called at the office of National Bank and Trust Company of Central Pennsylvania and was advised of both events.

The final accounting of the successor trustee in the *Bittinger Estate* disclosed a balance for distribution in the sum of $90,814.91. The petition for its adjudication in the Orphans' Court of Dauphin County, as well as the representations to the Court at the audit held on December 22, 1965, alleged that the only intestate heirs of Russell H. Bittinger were Alice Nace, Beulah Yost, and Howard G. Bittinger, his only nieces and nephews, being the children of the deceased brother, Edward G. Bittinger. No consideration whatsoever was given to the fact that both Elnora J. Stephenson and Frank E. Bittinger, sister and brother of the testator, had *survived* him but had since died without issue nor that the widow's estate had a possible intestate interest through her. It was evidently erroneously assumed by all parties that the intestacy occurred at the death of the widow life beneficiary rather than at the death of the testator.[1] The petition

1. The appellee now agrees:
   "As correctly pointed out by Judge Kohler in his lower court opinion, if the death of Charles E. Meckley, prior to the death of

for adjudication expressly posed the legal question: "Should distribution be made to the heirs-at-law of Russell H. Bittinger or pursuant to Item 3, paragraph (d)2 of the Will" bequeathing the remainder to Charles E. Meckley who had survived the testator but later died.

Counsel for the heirs of Charles E. Meckley filed "objection" to the petition for distribution claiming the entire fund had been bequeathed by the testator to Charles E. Meckley, thus entitling them to the entire estate.

On December 10, 1965, an agreement was executed by and among Alice Nace, Beulah Yost, Howard G. Bittinger, as alleged sole heirs at law of Russell H. Bittinger, Robert H. Meckley, and Ellen L. Meckley, sole heirs of Charles E. Meckley, reciting that "All of the parties hereto, being the only persons interested in the said remaining principal and income, which principal and income is set forth in the said paragraph XIII of the said Petition as $87,064.91, wish to avoid litigation and have entered upon a compromise settlement of the said claim and upon the amounts of distribution of the said remaining principal and income." The agreement further provided that "All of the parties hereto desire to settle said

the Bittinger widow and before he was able to completely administer the trust, created a total or partial intestacy under the will of Russell H. Bittinger, the intestacy relates back to the death of the testator, and his heirs are then determined. Pennsylvania Hunter Orphans' Court, Intestate Act, § 28, and cases cited.

This principle appears not to have been discussed or considered by counsel and the Court. No consideration appears to have been given to the fact that both Elnora J. Stephenson and Frank E. Bittinger, sister and brother of the testator, had survived him but had since died without issue, nor the fact that the widow's estate may have had a possible intestate interest. On the contrary, it appears that the next of kin of Russell H. Bittinger were determined as of the death of Nettie I. Bittinger, the life tenant." Appellee's brief pp. 13–14.

It seems that prior to the settlement of the *Bittinger Estate,* appellees recognized the *Stephenson Estate's* interest in the *Bittinger Estate,* and now before this Court the appellee also recognizes it. Only at the time of settlement was the appellant's and the *Stephenson Estate's* claim not recognized by the appellee.

claim as a compromise of all their claims against the said estate and trust, regardless of the assumption of facts by any or all of them, and regardless of any error of law, made, assumed, or interpreted by any or all of them." Under said agreement, Alice Nace, Beulah Yost, and Howard G. Bittinger were to receive three-fourths of the balance and the Charles E. Meckley heirs one-fourth thereof.

At the audit hearing, held on December 22, 1965, it was represented to the Court by counsel for all the parties to the agreement, and at least in the presence of Rudolph D. Hospers, Esq., as counsel for the accountant, that such parties were the sole parties interested in the fund before the Court and that "The only legal question which may be involved is whether distribution should be made as suggested by the accountant to the heirs of Russell H. Bittinger, or to the heirs of Charles E. Meckley, the deceased trustee." The agreement was filed with the audit record.

Following the audit hearing, the Court by its Adjudication dated December 27, 1965, directed the balance distributed in accordance with the aforesaid agreement dated December 10, 1965, and said Adjudication was finally confirmed.

By virtue of Section 1606(c) of the Banking Code of 1965, Act of November 30, 1965, No. 356, 7 P.S. Sec. 1606(c), the present respondent, National Central Bank, formerly National Bank and Trust Company of Central Pennsylvania, is responsible for any breach of fiduciary duties by Central Trust Company, the original executor of the *Stephenson Estate*, as its successor institution, and also succeeds to any fiduciary duties of the original executor.

After reviewing the factual situation,[2] the court below held that it could not order the relief requested by the

2. In addition to a hearing which was held on January 30, 1973, before Judge Kohler, a stipulation of facts was entered into by the parties and presented to the court.

appellant. The analysis of the court below was based upon its determination that the crucial issue in this matter was whether the estate of Elnora J. Stephenson was entitled to any share in the distribution of the *Bittinger Estate* after the widow's death, and that the Orphans' Court of York County was without jurisdiction to decide the rights of the parties in an estate which was under the jurisdiction of the Orphans' Court of Dauphin County, where the letters testamentary were granted.

As long ago as *Cutler's Estate*, 225 Pa. 167, 73 A. 1111 (1909), this Court observed that: "It is a familiar doctrine, . . . that the orphans' court is a court of limited jurisdiction, exercising only such power as is given it by statute, expressly or by necessary implication." While the Orphans' Court is a court of limited jurisdiction, it has consistently been held that the Orphans' Court has jurisdiction over the administration and distribution of the real and personal property of a decedent's estate, and it has full power to inquire into and determine all questions which may prevent or delay the conversion and distribution of the property of the decedent, if the property is shown to have been in the decedent's possession at his death, or if, for any reason, it can be shown to have been presumptively his. 225 Pa. at 170, 73 A. at 1112–13. *See* 3 Portridge-Remick, Pa. Orphans' Court Practice, § 25.03, p. 207 (1962). In viewing its limited jurisdiction, the Orphans' Court of York County was quite correct in its determination that it lacks jurisdiction to interpret the *Bittinger Will* and review the adjudication settled in the Orphans' Court of Dauphin County. "The right, power, and jurisdiction to grant a review is exclusively in the Orphans' Court *wherein the account sought to be reviewed was filed and confirmed.* That court cannot abnegate its jurisdiction or surrender its power to a court of another county which it would be doing if compelled to accept findings of such court made in a collateral proceeding and in another estate." *Kilpatrick Estate*, 368 Pa. 399, 404, 84 A.

2d 339, 341 (1951). *See also Craig Estate,* 379 Pa. 157, 159, 109 A.2d 190, 197–98 (1954); *Metz's Estate,* 323 Pa. 241, 185 A. 740 (1936).

While the Orphans' Court of York County has no jurisdiction to determine the substantive provisions of the *Bittinger Will,* the above cited cases, and this Court's Rules recognize various methods for overcoming the legal and procedural barriers in a case of this type. First, the lower court could retain jurisdiction of the underlying controversy and transfer the case to the Orphans' Court of Dauphin County for a substantive determination of the provisions of the *Bittinger Will.*[3] *See* Pa.R.Civ.Pro. 1006. Second, the Orphans' Court, upon application, may remove the executor and appoint a new executor, for purposes of prosecuting the cause of action, where a conflict of interest appears.[4] *See Craig Estate,* 379 Pa. 157, 159, 109 A.2d 190, 198 (1954).

While it is correct that the Orphans' Court of York County cannot adjudicate the rights under the *Bittinger*

---

**3.** Such a determination would not conflict with Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. § 3521, which provides:

"If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report, findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made."

This section is applicable to trusts. P.L. 508, June 30, 1972, Pa. C.S.A. Title 20, Sec. 7183(7). *See Stotesbury Estate,* 387 Pa. 591, 594, 128 A.2d 587, 588 (1957). First, appellant filed his action in York County within the five-year period and this should operate to toll the statute if this case is transferred for a determination of the *Bittinger Will.* Second, the statute is not directly applicable, as appellee would have us believe, for in this instance the appellant would not be seeking a surcharge against the "executor" of the *"Bittinger Estate"* whom the statute is directed to protect but against the "executor" of the *"Stephenson Estate."*

**4.** Here, the conflict appears from the fact that the executor of the *Bittinger Estate* and the executor of the *Stephenson Estate* are

*Estate,* our analysis of the record and law in this area compels us to conclude that the court below erred in not ordering an accounting and then surcharging the executor for amounts which he should have properly presented a claim for and collected. This is a serious result but one which we are compelled to reach due to the facts of this case and because of the degree of trust and loyalty which the Court expects of a fiduciary.

This Court has continuously held that "The measure of diligence and care required of a trustee [or an executor] is precisely that which a man of ordinary prudence would practice in the care of his own estate . . . . A reasonable degree of vigilance and the exercise of good faith is the standard of the trustee's duty." *Fahnestock's Appeal,* 104 Pa. 46, 52 (1883). Our cases make it clear that surcharge is the penalty imposed by the court for the failure of a fiduciary to meet his duty of care owed his estate. As we noted in *Miller's Estate,* 345 Pa. 91, 95, 26 A.2d 320, 321 (1942), "Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care."

This Court has had a long line of cases which have examined when an executor should be held liable for losses incurred by an estate due to the executor's failure to collect monies due the estate. *See Lerch Estate,* 399 Pa. 59, 159 A.2d 506 (1960) ; *Dauler's Estate,* 247 Pa. 356, 93 A. 511 (1915); *Skeer's Estate,* 236 Pa. 404, 84 A. 787 (1912); *Webb's Estate, Webb's Appeal,* 165 Pa. 330, 30 A. 827 (1895).

one and the same. In addition, the case law is clear that the appellant could not bring this action by himself in Dauphin County for he is not considered an "interested party" within the meaning of the Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. 3521. *See Kilpatrick Estate,* 368 Pa. 399, 84 A.2d 339 (1951); *Megargel Estate,* 349 Pa. 14, 36 A.2d 319 (1944); *Metz's Estate,* 323 Pa. 241, 185 A. 740 (1936); *Schadt's Estate,* 282 Pa. 523, 128 A. 487 (1925).

█ Accordingly, in order to surcharge an executor for the failure to collect monies due the estate of Elnora J. Stephenson, the Court is required to find that the executor was negligent in his handling of the affairs of this estate.

█ None of the cases cited above are truly illustrative of the type of problem that confronts the Court in the instant appeal. In *Webb's Estate, Webb's Appeal,* 165 Pa. 330, 30 A. 827 (1895), the executors hired an attorney, one Graham, to collect a debt due the decedent's estate. Graham collected the debt, but at the first account the executors failed to include this amount. A surcharge of the executors for this amount was sought. After a review of the record in the court below this Court found that no finding of fact was made by the court below as to why the money had never been collected from Graham and thus the Court could not determine whether the executors had committed negligence. Since none of the assets of the estate were distributed no surcharge was ordered and the case was remanded for a new account, subject to the following:

"Should they fail to show hereafter that they could not have collected the money after they were informed of its payment to Graham, a very grave question as to their liability to be surcharged will arise."

We believe the failure of the executor of the *Stephenson Estate* to make a claim against the *Bittinger Estate* was negligent and subjects it to surcharge. This result is mandated for many reasons. First, representations were made to the Stephenson Estate and to the appellant that they were probable beneficiaries of the Bittinger Estate,[5] thus indicating that their claims would be pro-

5. In addition to the facts already presented a stipulation entered into by the parties provides as follows:
"In addition, by letter dated August 10, 1955, Central Trust Company forwarded a copy of the First and Final Account to Richard Meloy, which letter contained the following paragraph: 'It is probable that the estate of Mrs. Stephenson will receive a

tected. Second, appellant notified the executor of his claim and interest and the executor assured appellant that he would be notified at the proper time.[6]  Third, the executor of the Stephenson Estate and the executor of the Bittinger Estate are one and the same. This in itself points to how hollow the appellee's argument is that it had no responsibility to press a claim against the Bittinger Estate because it was a mere contingency.[7]  Yet, acting as executor of the *Bittinger Estate* it included in the settlement heirs who had an intestate interest of a similar nature as the *Stephenson Estate,* and instead of presenting the estate's claim, indicated to the Dauphin County court that there were no other heirs. And this occurred after representations were made to both the *Stephenson Estate* and the appellant for a number of years that they both had a legitimate interest in the *Bittinger Estate.* We find it inexcusable in this case, where the executor of both estates is the same bank, that the

one-fifth share of the distribution from a trust fund created by her brother, Russell H. Bittinger. This fund was left for the benefit of her brother's widow during her lifetime. The principal, we understand, is approximately $60,000.00 at the present time. If and when funds from this source are received by us as Executor, a further accounting will be made with the Court." (Exhibit No. 6). Pp. 19a–20a of the record.

6.   This situation is distinguishable from cases where a fiduciary does not undertake the duty to notify. *See Thomas Estate,* 18 Pa.D. & C.2d 677, affirmed per curiam, 397 Pa. 403, 155 A.2d 816 (1959). *See also Burger Estate,* 425 Pa. 395, 229 A.2d 463 (1962).
Also distinguishable are claims by creditors of an estate. We have frequently held that knowledge by a fiduciary of the existence of a contingent claim does not relieve the presumptive creditor of the duty to give notice thereof to the fiduciary. *See, e. g., Dixon Estate,* 426 Pa. 561, 565, 233 A.2d 242, 245 (1967).

7.   It is fundamental that the court will not surcharge a fiduciary "for a mistake of judgment upon points in regard to which lawyers and judges might well differ in opinion." *See Wanamaker's Trust Estate,* 340 Pa. 419, 422, 17 A.2d 380, 381 (1941), and cases cited therein. However, these cases are distinguishable from the case at bar. Here, where the executor represented a potential beneficiary of an estate and that same executor granted a settlement to other beneficiaries who were also intestate heirs, without presenting the former's claim, there can be no question that gross negligence was committed.

*Stephenson Estate* claim was not presented and the appellant not notified. What we said in *Noonan's Estate*, 361 Pa. 26, 31, 63 A.2d 80, 83 (1949) had particular relevance here:

> "An executor is a fiduciary no less than is a trustee (Restatement, Trusts, § 6, Comment i.) and, as such, primarily owes a duty of loyalty to a beneficiary of his trust."

Accordingly, the decree of the Orphans' Court of York County is vacated and the executor is ordered to account and shall be surcharged for those monies which would have represented the *Stephenson Estate's* distributive share in the *Bittinger Estate* settlement, had the *Stephenson Estate's* claim been properly presented.

Decree vacated and case remanded for proceedings consistent with this opinion. Each party to bear own costs.